Lee Towhe Adams, J.
On the 20th day of June, 1963 one Calvin Kline, denominating himself as “ Calvin of Planet Barth ” declared that a new “ church ” had been born. He called his new “ church ” the Society of Families. The declaration stated the principles of the “ church ” to be entirely this worldly. Calvin, the founder, attracted an extremely sparse following. On September 5, 1968 three followers, being practically the entire company of believers, caused to be filed with the Chautauqua County Clerk a certificate of incorporation of the “ Society of Families Independent Church.” The certificate purportedly was made and filed in accordance with article 8 of the Religious Corporations Law. By proclamation, the authority for which was his ‘‘ Intrinsic and Constitutional Authority as Author and Founder of the Church, elected Clerk, and Supreme Moral Authority for the Church in My Time ”, Calvin of Planet Earth changed the name of his “ church ” to “Religious Society of Families.” The proclamation was filed February 16, 1971 in the County Clerk’s office.
The Religious Society of Families has acquired, by donation from Calvin and two of his followers some 350 acres of land in *924 the Town of Carroll. It demanded that the land and the buildings on it be exempted from taxation, pursuant to section 421 of the Real Property Tax Law, as a “ monastery and religious sanctuary.” The assessors of the Town of Carroll denied the exemption, and this proceeding was brought for a review under article 7 of the Real Property Tax Law.
There is no provision in the Real Property Tax Law for the exemption of monasteries per se. Section 421 of the Real Property Tax Law reads as follows, in part: “1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation as provided in this section.”
A monastery usually grows food. This may be used by the members, or sold. Either way it is in competition with commercial farmers.[1] Monastic lands under cultivation or pasturage are not “used exclusively for carrying out thereupon one or more of such [religious] purposes” (emphasis supplied); such acreage is used commercially. Petitioner’s claim that its lands should be exempt from taxation because it is a monastery has no basis in law.
Petitioner claims also that its lands are used as a religious sanctuary. For that claim to stand petitioner must be a religious body. The mere fact that it incorporated itself under the Religious Corporations Law is not determinative; its tenets and practices are. 'Some of its tenets are illegal ;[2] many of its tenets charitable, some appear to be scientistic,[3] but none are *925 religious as religion is traditionally defined.[4] The constitution, by-laws, and advertised beliefs of petitioner deny the existence of a higher power, or any divine power at all. If the courts, as constitutionally required, are to refrain from meddling in matters religious, they should restrict the definition of religion and religious society to its common, dictionary meaning. Chancellor Walworth in Baptist Church of Hartford v. Witherell (3 Paige ch. 296, 300) defined the words religious society as follows: ‘ ‘ But I apprehend that in this they have overlooked the distinction between the congregation, and the church strictly so called, which comprises only a part of the congregation or society. The church consists of an indefinite number of persons, of one or both sexes, who have made a public profession of religion; and who are associated together by a *926 covenant of church fellowship, for the purpose of celebrating the sacrament, and watching over the spiritual welfare of each other. But a religious society, or congregation, as recognized by the third section of the statute providing for the incorporation of religious societies, is, with us, what is usually denominated a poll parish, in some of the neighboring states. It consists of a voluntary association of individuals or families, united for the purpose of having a common place of worship, and to provide a proper teacher to instruct them in religious doctrines and duties, and to administer the ordinances of baptism, &c.”
The Chancellor’s opinion has been cited with approval by many courts, for it is consonant with the dictionary definition. (Fiske v. Beatty, 206 App. Div. 349.) In the Fiske case the Appellate Division also cited another of Chancellor Walworth’s decisions, Lawyer v. Cipperly (7 Paige ch. 281) wherein he used the phrase “ divine worship.”: The Legislature knew the dictionary definition and legal definition of religious purpose when it enacted section 421 of the Beal Property Tax Law and accordingly also made provision in such section for tax exemption of nonreligious eleemosynary institutions, or associations, organized for “charitable,, hospital, educational, moral or mental improvement
Circuit Judge Augustus Hand, speaking for himself and Judges Clark and Frank in United States v. Kauten (133 F. 2d 703, 708) spoke of religion with less orthodoxy, than Chancellor Walworth, but with equal recognition of the limitation of the power of human reason and acceptance of higher powers: “ It is unnecessary to attempt a definition of religion; the content of the term is found in the history of human race and is incapable of compression into a few words. Beligious belief arises from a sense of the inadequacy of reason as a means of relating the individual to his fellow-men and to his universe — a sense common to men in the most primitive and in the most highly civilized societies. It accepts the aid of logic but refuses to be limited by it. ”
Petitioner totally denies the existence of Godand totally relies upon human reason. This requires that it be excluded from the company of religious institutions. It should, perhaps, have been incorporated as a membership corporation as is the “ American Ethical Union ”, which represents 24 ethical culture societies and fellowships in the United States. The ethical culture societies work for human betterment through reason (as petitioner purports to do) and they are not deemed to be religious societies by the Legislature. /Section 11 of the Domestic *927 Relations Law makes a specific distinction between ministers of a religion and leaders of ethical culture.[5]
Petitioner is not a religious organization entitled to tax exemption, nor, even if it reincorporated as a nonprofit corporation, could it be considered an organization ‘ ‘ organized for * * * moral or mental improvement ” so long as one of its tenets encourages suicide, and is accordingly illegal.
The petition is dismissed and the determination of the assessors denying tax exemption is affirmed.

. Cf. Wickard v. Filburn (317 U. S. 111, 128) “But if we assume that it [wheat] is never marketed, it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this- sense competes with wheat in commerce.”

. Death is normally by suicide. It is morally monstrous to avoid and postpone death in the extreme and at preposterous expense. You have a moral obligation to self-destruct after age 60 (decimal 72), and society has a right and obligation to impose death after age 100 (decimal 144). Deep freeze of moribund is tabu. Mercenary medicine should be phased out as soon as possible.

. Religious Society of Families, R. D. 2, Frewsburg, New York, 14738, is a disciplined neo-monastic religious society for the prevention of Monomio cruelty to the planet and genetic cruelty to posterity. Emphasis is on decommerialized land-use, homesteading, solar power, decentralization of production and authority, recycling materials, population control, and survival of mankind and other wildlife. Unique features include eugenics practice requiring members .to forego reproduction in earlier barbarian tradition. Scientific humanism is the theological gist. Nominal monogamy is the sexual gist. Land available. Members needed. Serious sincere inquiries cordially invited.

. Webster’s Third Edition: “religion — syn faith, church, creed, communion, denomination, sect, cult, persuasion: religion is a general term esp. applicable to the great revelations and the larger subdivisions among their believers (the Christian religion) (the Roman Catholic or Methodist religion) faith is applicable to any formulated and established major religious group; it may or may not suggest ardent, complete acceptance (the Muhammadan faith) (the Mormon faith) (men of all faiths) church is likely to stress the existence of an established formal organization and procedure; it may suggest a Christian rather than non-Christian context (the Orthodox Church) (the Presbyterian Church) creed differs from faith in more strongly suggesting formal doctrinal expression of what is believed — accord on the basis of doctrinal assent — but is applicable to most religious groups (men of the Lutheran creed) (the creed of Hebraism) communion may suggest accord on liturgical or sacramental practice and earnest, close fellowship in worship; it is applicable to both larger and smaller groups, denomination is likely to suggest a smaller section called by a distinctive name of a larger group (various Protestant denominations) sect now indicates a smaller group which has split off from a larger through discontent with some matter of doctrine or observance (the Uniat sect) (a sect composed of the followers of John Huss) cult suggest a small group holding to unusual, grotesque, or secret spurious notions and rituals (forbade the practice of certain eastern cults, and expelled from Rome Greek and Asiatic magicians — John Buchan) persuasion may suggest conviction arising from evangelism or exhortation; often it is more or less interchangeable with faith (chapel goers, people of Wesleyan persuasion).”
Oxford English Dictionary: “Religion: 1. A state of life bound by monastic vows; the condition of one who is a member of a religions order, esp. in the Roman Catholic Church. 2. A particular monastic or religious order or rule; a religious house. 3. Action or conduct indicating a belief in, reverence for, and desire to please, a divine ruling power; the exercise or practice of rites or observances implying this. Also pi., religious rites. Now rare, exc. as implied in 5. 4. A particular system of faith and worship. 5. Recognition on the part of man of some higher unseen power as having control of his destiny, and as being entitled to obedience, reverence, and worship the general mental and moral attitude resulting from this belief, with reference to its effect upon the individual or the community; personal or general acceptance of this feeling as a standard of spiritual and practical life.”

. Section 11 of the Domestic Relations Law. “By whom a marriage must be solemnized. No marriage shall be valid unless solemnized by either: ‘ 1. A clergyman or minister of any religion, or by the senior leader, or any of the other leaders, of The Society for Ethical Culture in the city of New York, having its principal office in the borough of Manhattan, or by the leader of The Brooklyn Society for Ethical Culture, having its principal office in the borough of Brooklyn of the city of New York, or of the Westchester Ethical Society, having its principal office in Westchester county, or of the Ethical Culture Society of Long Island, having its principal office in Nassau county, or of the Riverdale-Yonkers Ethical Society having its principal office in Bronx county, or by the leader of any other Ethical Culture Society affiliated with the American Ethical Union.”’