**PARSHALL CHRISTIAN ORDER, R. E. Parshall and J. A. Parshall, Stewards, Appellants,**

v.

**BOARD OF REVIEW, COUNTY OF MARION, Iowa, and Conference Board of Marion County, Iowa, Appellees.**

No. 65844.

Supreme Court of Iowa.

Feb. 17, 1982.

Craig R. Hastings of Clark, Clark & Hastings, Ames, for appellant.

Jeffrey E. Lamson and Ann Marie Williams of Belin, Harris, Helmick & Heartney, Des Moines, for appellees.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

In this appeal we determine whether certain property is entitled to tax exemption under section 427.1(9), The Code 1979 (property of religious, literary, and charitable societies).

Robert E. and Joyce A. Parshall are married and have two teenage sons. They moved from California to Iowa in 1973 and purchased a tract of 155 acres near Hamilton, Iowa. That property, which is the subject of this appeal, consists primarily of rolling timberland with the exception of thirty-five acres which are tillable. Several structures are situated on the property, including a two-story house, garage, barn, and various storage facilities. During most of the year those structures are not visible from the public road because of numerous trees surrounding the area. The entrance to the property has a closed gate which is occasionally locked.

In December 1975, the Parshalls founded the Parshall Christian Order (PCO), a religious order dedicated to the advancement of biblical teachings. PCO consists of Robert Parshall, denominated as its chief steward, Joyce Parshall, assistant steward, and the two sons, who are referred to as members. No other person has been a member of PCO or applied for membership. Robert Parshall testified that new members would be welcome to join PCO if they were willing to abide by its rules and take the required oaths. Nothing in the record, however, suggests that PCO has made any effort to recruit additional members. The members of PCO are thus identical to the members of the Parshall family.

PCO was founded as an integrated auxiliary of the Miletus Church, Inc., a Delaware nonprofit corporation. The Miletus Church was founded in 1974 and is currently based in Cross Plains, Texas, where David Holmes, its founder and acting bishop, resides. The Miletus Congregation consists of Holmes and approximately eighty orders throughout the world. Each order is similar to PCO in that the basis of organization is the family unit. Communication between Holmes and the various orders is conducted primarily by means of weekly newsletters and recorded tapes which reproduce Miletus Church religious ceremonies and teachings. Holmes also travels throughout the country and makes periodic visits to the various

orders for religious counseling and bible study.

As a prerequisite for association with the Miletus Church, PCO was required to subscribe to the Miletus statements of faith and religious practice. A fundamental belief of the Miletus Church is that all property belongs to God and that the human race is to act merely as stewards to utilize property to the best of their abilities and to protect the property which God has permitted them to use during their lives on earth. To comply with this belief, the Parshalls executed a vow of poverty on December 31, 1975, whereby they purported to make an irrevocable gift of all their real and personal property and all future income to PCO. Pursuant to the vow of poverty, on January 24, 1977, Robert and Joyce Parshall conveyed the tract of 155 acres and the structures on it to PCO. The members of PCO have since referred to that property as Parshall Christian Acres. In addition to the real estate, PCO also holds title to basic farm implements and two tractors, and to one of two automobiles used by the family. PCO bylaws state that in the event PCO members die or the order is otherwise dissolved, all real and personal property shall be distributed to a nonprofit organization which is operated exclusively for Christian religious purposes.

PCO operates upon the theological position that the Christian Bible is the fundamental word of God and that its teachings should guide PCO members in every facet of their lives. PCO further holds that the Bible dictates separation from the outside world to prevent contact with its many detrimental influences. That belief in separation motivated the Parshall family to move from an urban area in southern California to a rural area in Iowa. PCO also holds that God established the family as the basic unit of society and that the family should accordingly separate itself from the outside world. These beliefs underlie the formation of PCO and membership in it.

The belief in separation has required PCO to become largely self-sufficient. It uses Parshall Christian Acres to provide the needs for food, shelter, and fuel. In 1979 PCO planted ten acres of wheat and eight of hay. All of the crop was used by PCO with the exception of 200 bushels of wheat which were sold for $350. Electricity is provided by a wind-driven generator, and heat by a wood-burning furnace.

The Parshalls' home, or "rectory" as they call it, is used for several purposes in addition to a residence. The Parshall children receive all their education at home with the parents as instructors using special Christian textbooks. Religious activities are also conducted in the home on a daily basis. Those activities consist of a religious service every weekday morning and on Sunday at noon, bible study sessions, and sessions in which Miletus Church tapes are played. Although Robert Parshall testified that these activities are open to the public, the record discloses that they are attended solely by PCO members with the exception of an occasional group bible study session. Neither Robert or Joyce Parshall has any formal theological training.

PCO has an outside source of income from Robert Parshall's employment as a flight engineer for United Airlines. In 1979 his salary was approximately $48,000, with no federal or state income tax withheld. PCO maintains a checking account at People's Bank in Albia, Iowa, and in accordance with the vow of poverty, each paycheck is deposited in that account. Neither Robert or Joyce Parshall maintains a personal bank account. PCO pays all the living expenses of its members and the upkeep of Parshall Christian Acres. Expenses include food, clothing, shelter, automobile insurance and expenses, mortgage payments, and other essentials.

Deposits to PCO's checking account from Robert Parshall's paycheck are reported to the Internal Revenue Service as income to the Miletus Church. Miletus therefore oversees PCO's financial affairs and requires periodic financial reports. Each year PCO drafts a proposed budget and sends it to the Miletus Church bishop who may make modifications before approving it. Although association with the Miletus

Church apparently costs nothing, yearly donations are made by each order including PCO, which contributed $400 in 1979.

On January 26, 1979, Robert Parshall, as chief steward of PCO, filed a claim for tax exemption with the Assessor of Marion County, Iowa, claiming that the tract of 155 acres and the buildings are exempt from taxation under section 427.1(9) of the Code. That law provides so far as relevant here:

The following classes of property shall not be taxed:

. . . .

9. *Property of religious, literary, and charitable societies.* All grounds and buildings used or under construction by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects, not exceeding three hundred twenty acres in extent and not leased or otherwise used or under construction with a view to pecuniary profit.

The assessor determined the property to be taxable, and PCO filed a petition with the Marion County Board of Review. The board subsequently denied the appeal, and PCO commenced this case in district court alleging that PCO is a religious institution or society, that the real estate and buildings are used solely for the purpose of furthering the religious beliefs of PCO members, and that no property is leased or otherwise used for pecuniary gain. The district court likewise denied the appeal, finding that PCO is not a religious institution or society within the meaning of section 427.1(9) and that the property is not used solely for the appropriate objects of a religious institution or society.

On appeal to this court, PCO contends that (1) it is a religious institution or society as contemplated by section 427.1(9), and (2) its property is used solely for the appropriate objects of a religious institution or society. We conclude that PCO is not a religious institution or society within the meaning of our exemption statute. Hence we do not reach the second issue.

Section 427.1(9) entitles a religious organization to a property tax exemption when three requirements are satisfied. First, the property must be "used . . . by . . . *religious institutions and societies.*" (Emphasis added.) Second, the property must be used by religious institutions and societies "solely for their appropriate objects." Third, the property must not be used or leased "with a view to pecuniary profit." *Congregation B'Nai Jeshurun v. Board of Review of City of Des Moines*, 301 N.W.2d 755, 756 (Iowa 1981). We may assume for purposes of decision that the second and third requirements are met. Does PCO satisfy the first requirement?

I. Before considering the merits of that issue, we review the rules of construction applicable to tax exemption statutes. Those statutes are strictly construed with any doubt resolved in favor of taxation and against exemption. *Congregation B'Nai Jeshurun*, 301 N.W.2d at 756; *Southside Church of Christ v. Des Moines Board of Review*, 243 N.W.2d 650, 654 (Iowa 1976); *Dow City Senior Citizens Housing, Inc. v. Board of Review of Crawford County*, 230 N.W.2d 497, 499 (Iowa 1975); *Wisconsin Evangelical Lutheran Synod v. Regis*, 197 N.W.2d 355, 356 (Iowa 1972). *See also* 3 *Statutes and Statutory Construction* § 63.-08 (4th ed. C. Sands 1974). The party seeking exemption has the burden of proving that the property in question falls within the exemption statute. *Congregation B'Nai Jeshurun*, 301 N.W.2d at 756; *Southside Church of Christ*, 243 N.W.2d at 651. The objects and purposes of the organization as declared in its articles of incorporation or other founding papers are not controlling in determining the question of exemption. That question must be determined by the actual use to which the property is committed. *Evangelical Lutheran Good Samaritan Society v. Board of Review of City of Des Moines*, 200 N.W.2d 509, 511 (Iowa 1972); *South Iowa Methodist Homes, Inc. v. Board of Review of City of Des Moines*, 173 N.W.2d 526, 530 (Iowa 1970). Our recent decisions construing section 427.-1(9) have tightened the exemption. *Congregation B'Nai Jeshurun*, 301 N.W.2d at 756, 759; *Southside Church of Christ*, 243

N.W.2d at 654; *Dow City Senior Citizen Housing*, 230 N.W.2d at 499.

II. The trial court concluded that PCO is not a religious institution or society but instead consists of a family which has assumed the guise of a religious order to avoid the burdens of taxation. On appeal PCO asserts that the trial court applied an overly narrow definition of religious society and that under a broader interpretation it would satisfy the religious requirement.

The question of what constitutes a religious institution or society under section 427.1(9) is one of first impression for this court. "Institution" is defined as "an established society or corporation: an establishment or foundation *esp. of a public character.*" *Webster's Third New International Dictionary* 1171 (1976) (emphasis added). "Society" is defined as "a voluntary association of individuals for common ends; *esp.:* an organized group living or working together or periodically meeting or worshiping together *because of a community of interests or beliefs or a common profession :* a corporate or cooperative body." *Id.* at 2162 (emphasis added).

The only Iowa case we have found construing a similar term is *First Presbyterian Church v. Dennis*, 178 Iowa 1352, 161 N.W. 183 (1917). There the court defined "church society" as:

> [A] voluntary organization, whose members are associated together not only for religious exercises but also for the purpose of maintaining and supporting its ministry and providing the conveniences of a church home and promoting the growth and efficiency of the work of the general church of which it forms a co-ordinate part.

*Id.* at 1362, 161 N.W. at 187.

Courts in other jurisdictions, however, have defined the phrase "religious society." The New Jersey equity court stated, "The association of persons *for religious as opposed to secular purposes,* having no regard to the particular mode or manner of constituting or forming the body, answers the description of a religious society." *St. John the Baptist Greek Catholic Church v. Gen-gor*, 121 N.J.Eq. 349, 356, 189 A. 113, 117 (1937) (emphasis added). A "religious society" has been defined to be "a voluntary association of individuals or families united for the purpose of *having a common place of worship* and *to provide a proper teacher to instruct them* in religious doctrines and duties, and *to administer the various ordinances of religion.*" *In re Religious Society of Families v. Assessor and Board of Assessment Review of Town of Carroll, Chautauqua County*, 73 Misc.2d 923, 926, 343 N.Y.S.2d 159, 162 (1973), *aff'd*, 75 A.D.2d 1004, 429 N.Y.S.2d 321 (1980) (emphasis added). *See also Church v. Bullock*, 104 Tex. 1, 5, 109 S.W. 115, 117 (1908).

Nothing in these definitions suggests that a religious society can consist solely of the members of a nuclear family. Inherent within those definitions is the notion that the various individuals composing a religious society have become associated only through their mutual desire for worship and religious education. Except for that desire the association of those particular individuals would not have occurred. Such is obviously not the case with PCO. The members of the Parshall family are not associated only because of their desire for mutual worship; they are associated as a family. They will continue as a group regardless of any religious beliefs they may possess. Because the predominant reason for the Parshalls' association is not religious pursuit, we conclude that PCO is not a religious institution or society as contemplated by section 427.1(9).

Cases from other jurisdictions lend support to our conclusion. In one case a Reverend Ham and his wife established a nonprofit religious corporation. *Mordecai F. Ham Evangelistic Ass'n v. Matthews*, 300 Ky. 402, 189 S.W.2d 524 (1945). The corporation held title to residential property which the reverend and his wife occupied as a home. It also paid all living expenses for the couple and for the upkeep of the residential property. The purpose of the corporation was to promote Reverend Ham's evangelistic work. Reverend Ham accomplished that task by conducting Christian

evangelistic services throughout the country and by radio broadcasts, independent of any religious denomination.

A controversy arose when the corporation applied for a tax exemption of its residential property. The Kentucky Constitution exempted "all parsonages or residences owned by any *religious society* and occupied as a home, and for no other purpose, by the minister of any religion." (Emphasis added.) In discussing the meaning of the term "religious society", the court stated:

> This leads to the consideration of whether he and his wife, employees and unattached and unorganized audiences and contributors collectively are to be regarded as a "religious society" in the contemplation of the Constitution. The words are to be taken in their ordinary acceptation, as understood by the framers of the Constitution and the people who adopted it. Any meaning of a term and all purposes apparently not within its contemplation must be excluded in the interpretation. The term "religious society" is an old one. In the English ecclesiastical law and in our own law, both statutes and judicial opinions, it has had a well-understood meaning, being used interchangeably with "church" or some group organized and maintained for the support of public worship. The framers of the Constitution were familiar with all this. While we do not find the term to have been expressly defined by this court, it was commonly used in the generally accepted sense, and in accordance with designations or definitions given in the dictionaries and elsewhere as being an association or body of communicants or a church usually meeting in some stated place for worship or for instruction, or organized for the accomplishment of religious purposes such as instruction or dissemination of some tenet of particular faith or otherwise furthering its teachings. The Oxford English Dictionary defines "Society" as "Association with one's fellow man" and "A number of persons associated together by some common interest or purpose, united by a common vow, holding the same belief or opinion,

following the same trend or profession, etc.; an association."

*Id.* at 408, 189 S.W.2d at 527–28 (citations omitted). Reverend Ham contended that the corporation had a large congregation, composed of all those persons listening to his radio broadcasts and attending his services. The court, however, rejected that argument and concluded that the corporation was not a "religious society" as that term was commonly understood. The court conceded the religious orientation of the corporation, but went on to state:

> In this case there is no question but what this appellant corporation and the Reverend Mr. Ham are engaged in religious activities. . . . But we are constrained to hold that the ownership is lacking the element of a "society." As observed by the chancellor: "We could hardly conceive of a society, as we understand it from the broader term, existing without some time or another there is a getting together. The term society itself implies a getting together of its members, although it is true persons may worship God or even receive religious instructions without getting together." The many contributors and the audiences may be regarded as a kind of fellowship but not as a "society" within the meaning of the Constitution. There is no communion, no unity, no society. This is a one man organization; at least, as said by the chancellor, "Its whole operation is centered around one personality." He is not a pastor and the organization is not a church. He does not claim it to be. We are not quite sure that the appellant nor the individuals it represents, is the type of religious organization whose parsonage or residence of the minister is tax free. If the property should be held exempt under these circumstances, the decision would afford a facility or means for any individual engaged in religious service to escape payment of taxes on his residence.

*Id.* at 409–10, 189 S.W.2d at 528.

A federal district court confronted a situation remarkably similar to the present one. *American Guidance Foundation, Inc. v.*

*United States*, 490 F.Supp. 304 (D.C.1980). American Guidance Foundation (AGF) was founded by one Seyfried and consisted of five members of his immediate family. He regularly conducted worship services in his apartment living room for the members of AGF congregation. Those services often included the playing of religious tapes. Apart from its private services, AGF also advertised in the yellow pages of the telephone book and provided telephone callers with a recorded religious message. The dispute arose when AGF applied for tax exempt status as a "church" under the Internal Revenue Code. Concluding that AGF was not a "church" within the general or traditional understanding of that term, the court stated:

> At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role.
>
> Plaintiff fails to satisfy the standard. Mr. Seyfried and his wife pray together in the physical solitude of their home. They do not constitute a "congregation" within the ordinary meaning of the word. AGF has made no real effort to convert others or to extend its membership beyond the immediate Seyfried family. Its telephonic religious message hardly qualifies as dissemination of a creed or doctrine. Its "religious instruction" consists of a father preaching to his son. Its "organized ministry" is a single self-supported clergyman. Its "conduct of religious worship" does not extend beyond the family dwelling, which is used primarily for non-religious purposes. Rather than ministering to a society of believers, plaintiff is engaged in a quintessentially private religious enterprise.
>
> . . . .
>
> It is not enough that a corporation believes and declares itself to be a church. Nor is it sufficient that the applicant prepares superficially responsive documentation for each of the established IRS criteria. To hold otherwise would encourage sham representations to the IRS and result in adverse tax consequences to the public at large. In this instance, AGF does not employ recognized, accessible channels of instruction and worship. There is little if any evidence that it seeks to reach or serve a congregation. Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church.

*Id.* at 306–07.

A recent Minnesota case also is quite similar to the facts presently before us. *Ideal Life Church of Lake Elmo v. County of Washington*, Minn., 304 N.W.2d 308 (1981). One Rossow founded the Ideal Life Church (ILC) which consisted of himself and ten members of his family. Eventually the membership increased to include a neighbor and his wife and three other persons unrelated to the Rossow family. Shortly after ILC was established, Rossow and his wife conveyed their property and home to it. As in the present case, ILC was controlled solely by the family of which it was composed. ILC, like PCO, also spent significant sums for mortgage payments and maintenance costs of the Rossow home. ILC applied for but was denied a property tax exemption. On appeal the court was required to determine whether ILC was a "church" within the meaning of the Minnesota exemption statute. The court applied a "factual analysis" test and concluded that the ILC failed to qualify. *Id.* 304 N.W.2d at 317. Although both *American Guidance Foundation* and *Ideal Life Church* were concerned with the term "church", courts have held that term to be interchangeable with "religious society". *Trustees of Pencader Presbyterian Church v. Gibson*, 26 Del.Ch. 375, 385, 22 A.2d 782, 787–88 (1941); *Bates v. Schillinger*, 128 Me. 14, 17, 145 A. 395, 397 (1929); *In re Douglass' Estate*, 94 Neb. 280, 284, 143 N.W. 299, 300 (1913); *Riffe v. Proctor*, 99 Mo.App. 601, 607, 74 S.W. 409, 410 (1903); *Josey v. Union Loan & Trust Co.*, 106 Ga. 608, 611, 32 S.E. 628, 629 (1849).

We conclude that PCO has failed to sustain its burden of demonstrating that it is a religious institution or society within the meaning of our exemption statute. To hold otherwise would lead to a result which the legislature surely did not intend. The property in question is currently being used as a home and farm for the Parshall family, just as it was before PCO was established. People may not transform their families into religious organizations and thereby obtain exemption for property over which their dominion and use remain unaffected. Granting tax exempt status to PCO would exalt form over substance and violate the rule of construction that exemption statutes are strictly construed.

The assessor correctly denied exemption.

AFFIRMED.