PARSHALL CHRISTIAN ORDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Parshall Christian Order v. Commissioner
Docket No. 19931-81X.
United States Tax Court
T.C. Memo 1983-11; 1983 Tax Ct. Memo LEXIS 774; 45 T.C.M. (CCH) 488; T.C.M. (RIA) 83011; January 10, 1983. *774 Held: Respondent's determination that petitioner does not qualify as an organization exempt under sec. 501(c)(3) upheld. Lee Boothby, for the petitioner. Genelle F. Schlichting and Keith A. Aqui, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined that petitioner was not organized and operated exclusively for one or more of the exempt purposes specified in section 501(c)(3)[1] and hence was not exempt from Federal income tax. Respondent further determined that contributions to petitioner were not deductible under Code section 170. Petitioner has invoked the jurisdiction of this Court pursuant to section 7428. The prerequisites for declaratory judgment have been satisfied. Petitioner claims to be exempt under section 501(c)(3) as an integrated auxiliary of a church. The primary issue for our determination is whether or not petitioner meets the organizational and operational tests required of organizations claiming exemptions under that Code section. See section 1.501(c)(3)-1, Income Tax Regs. Petitioner also asserts *775 that respondent did not conform to its own administrative procedures set forth in Rev. Proc. 79-46, 1979-2 C.B. 521; that such failure shifts the burden of proof to respondent under Rule 217 (c)(2)(ii), [2] and that respondent's criteria for exemption of a church from Federal income tax under section 501(c)(3) were contrary to the First and Fifth Amendments to the United States Constitution. The case was submitted on the stipulated administrative record under Rules 122 and 217. For purposes of this proceeding, we assume that the facts set forth in or derived from the administrative record are true. Under Rule 217(c)(2), the burden of proof is upon petitioner as to jurisdictional requirements and as to the grounds set forth in the notice of determination. For the reasons set forth herein, we hold that the burden of proof in this proceeding is upon petitioner. We further hold that petitioner does not meet the organizational and operational tests and thus was not an exempt organization as of December 31, 1975. [3] *776 FINDINGS OF FACT The administrative record reflects that petitioner was located in Hamilton, Ohio, at the time that this petition was filed. Petitioner is an offspring of Miletus Church, Inc. (Miletus), which is recognized by respondent to be a church exempt under section 501(c)(3). [4] *777 Its determination letter dated July 22, 1975, was issued by respondent's Scranton, Pennsylvania, office. That determination was, however, limited to Miletus; it was not a group exemption applying to churches affiliated with Miletus. [5] Petitioner has not applied for or received recognition as an exempt organization. [6] Its exemption claim is predicated upon its asserted status as an "integrated auxiliary" of Miletus. Petitioner's principal officer is Robert E. Parshall (Parshall). According to the record, this proceeding commenced in July 1977 with a request by the St. Louis District Director for information in order to determine whether or not an examination of petitioner pursuant to section 7605(c) was necessary. From that point until the adverse determination issued by respondent on April 29, 1981, petitioner and respondent were in periodic communication, with petitioner in most instances declining to furnish to respondent any useful information about petitioner's organization or operations. During this process, respondent issued an administrative summons to petitioner which ultimately was enforced by order of the United *778 States District Court for the Southern District of Iowa entered on September 10, 1979. Based on the limited information in this record, we find that during this period an organization described as an integrated auxiliary of Miletus was formed by the execution of articles of organization (sometimes also referred to as a "charter" and in this instance as "by-laws"). Although Miletus appears to have been incorporated, there is no indication that an integrated auxiliary was required to incorporate. The articles of organization: (i) specified the name of the organization, the location of its principal office, the name of its "chief steward" (normally a lifetime appointment) and membership requirements; (ii) stated that title to property remained with the organization, [7] was dedicated to the purposes of the organization, and on dissolution the remaining property passed to a nonprofit organization; (iii) described intra-society discipline and finally, (iv) provided power in Miletus to revoke the "charter" or articles and in each party to terminate the relationship. The articles were signed by the chief steward and the assistant or associate (normally his wife) and were approved by Holmes *779 as Bishop of Miletus. Two other documents were material. A notarized vow of poverty was executed by each member. The specimen form in the record purports to transfer to the organization (the integrated auxiliary) all property, including automobiles, household goods, bank accounts, etc. The other document, styled a "covenant," was executed by Holmes, by each member and by an officer of the organization. The covenant, among other provisions, specified that the "member and officer" have read and will abide by the organization's "articles," and that in view of the vow of poverty, the order will provide "reasonable and modest allowances and/or other provisions for the member's housing, food, transportation, clothing, education & other proper needs * * *." It recognized that the member had made a vow of poverty and a gift of the member's possessions but specified that the vow may be repudiated. There were other documents but they are not material to our decision. Unfortunately, the only fully completed and executed organizational documents contained in *780 this record are the covenant signed on December 31, 1975, by Holmes as Bishop, Parshall as a member and Parshall as the "Order's Chief Officer" and the vow of poverty signed by Parshall and Mrs. Parshall on the same date. [8] This vow of poverty is not entirely on the specimen form mentioned above but contains the following qualifying language: Note: While this initial gift and the succeeding gifts here provided for are irrevocable, thus complying with irrevocable-gift-tax exempt status, they will revert to the giver instead of continuing in perpetuity if civil government officialdom were to 'void' this act against my express will and intent as by invalidating my right to continue as a as a [sic] member, minister or official of the Church/Order, or by impeding the power of the Order/Church to designate after death succession to religious hierarchy, or by blocking the rightful tax-exempt maintenance *781 of Church/Order possessions in whatever way determined upon as in setting up other Christian Orders/Churches anywhere/elsewhere in the created world, or by interfering in anyway with Biblical and rightful freedom from 'taxes' and with the enjoyment of other Biblical Law rights and benefits as accorded to churches and orders and thus by fundamental law as rightfully accorded this Church/Order as found under the Constitution of the United States of America at the below date. The covenant refers to the organization's "by-laws," but the content clearly shows that the reference is to the basic organizational document normally referred to as the articles of organization or charter. The administrative record contains, however, no such basic organizational document for petitioner; [9] *783 the only articles of organization in the record are the specimen articles used generally in setting up auxiliary churches. The parties have stipulated that the exhibits are "genuine." In the light of this stipulation and the reference to the "by-laws" in the covenant, we resolve the ambiguity in the record in petitioner's favor and assume for purposes of this record that "by-laws" or articles of organization were *782 executed by petitioner on a form similar to the specimen articles appearing in the record. The administrative record also contains a document on stationery of Miletus, dated July 25, 1977, and styled "certificate," which is signed by Holmes and certifies that the Parshall Christian Order is an integrated auxiliary of the Church, that members of the Order subscribe to the Miletus Statements of Faith, that Parshall is a member of the Order in good standing and an agent of the Church and that he provides "required religious duties, functions and services." For purposes of this case, and in view of the stipulation, we accept the truth of this certificate and assume that both Holmes and Parshall are carrying out their activities with a good faith belief in the tenets of Miletus. The examination of petitioner was undertaken with the authorization of the Regional Commissioner pursuant to section 7605(c). The District Director was authorized to determine, among other matters, petitioner's qualifications under section 501(c)(3) and whether contributions to petitioner were deductible under section 170, all *784 based on records pertaining to the calendar year 1975. On September 24, 1979, the Internal Revenue agent in charge of the investigation advised Mr. and Mrs. Parshall that his examination of petitioner had been concluded and that he was considering requesting technical advice from the National Office. On October 30, 1979, formal notice was sent to petitioner of the decision by the agent to request technical advice. A copy of the proposed techincal advice request was attached to the notice. We find that Rev. Proc. 79-46, 1979-2 C.B. 521, was followed by respondent in all material respects. During 1975 and presumably before and after that period, Parshall was employed by United Airlines as a flight engineer. In a document signed by Holmes and dated December 18, 1975, styled "Statutory Notice Pursuant to the I.R. Code, Section 3402(n)," Holmes certified that Parshall was required by the Church to work for United Airlines in that capacity. The certificate purported to be valid for one year subsequent to December 31, 1975. On this record, we find that the members of petitioner consisted of Parshall, Mrs. Parshall and their dependent children. [10] *785 OPINION At the outset, we feel constrained to comment that this proceeding appears to be an exercise in futility. Irrespective of the status of petitioner as an exempt organization, Parshall's salary as a flight engineer for United Airlines was taxable to him and subject to income tax withholding. [11]Stephenson v. Commissioner, 79 T.C.     (December 13, 1982); McGahen v. Commissioner,76 T.C. 468 (1981), on appeal (3rd Cir., August 24, 1981); Greeno v. Commissioner,T.C. Memo. 1981-521. [12] Under these cases, Parshall would not be entitled to a charitable contribution *786 deduction under section 170 for any portion of his salary turned over to petitioner. We further assume that respondent has followed his regulations and required withholding by United Airlines. See section 31.3402(f)(21)-1(g), Employment Tax Regs. Also, we believe that the summons enforcement proceeding should have obtained the full documents that were available, and thus the articles or by-laws of petitioner should have been sought and obtained in that proceeding or petitioner committed to the fact of nonexistence of the basic organizational document. A preliminary procedural issue we must decide is whether the burden of proof, which under Rule 217(c)(2) is normally *787 on petitioners in section 7428 actions, has shifted to respondent in this case. Petitioner contends that respondent's actions did not conform to its own administrative procedures set forth in Rev. Proc. 79-46, 1979-2 C.B. 521, and that such failure shifts the burden to respondent under Rule 217(c)(2)(ii). We have found, however, that Rev. Proc. 79-46 was followed by respondent in all material respects. Thus, the burden is on petitioner to establish its entitlement to tax exemption under section 501(c)(3). On this record it would be quite appropriate to dispose of this case by concluding that petitioner has failed to carry his burden of proof. However, in the interest of expedient administration of this Court's resources, we prefer to make reasonable inferences from the administrative record in order to reach the merits of the issue. Thus, we assume that articles or by-laws were entered into in 1975 and that they followed the specimen form generally used in creating integrated auxiliaries of Miletus. We note, as we did in Basic Bible Church v. Commissioner,74 T.C. 846, 855 (1980), that "[p]etitioner had ample opportunity during the administrative procedure to submit facts which *788 would establish its qualification for tax-exempt status." Petitioner has only itself to blame for the fact that there may be in this record a "paucity" of facts, especially since we have resolved ambiguities in petitioner's favor. Petitioner's principal claim is that it is an integrated auxiliary of Miletus and therefore shares or comes under the umbrella of that Church's exempt status. The articles which we infer to have been executed give Miletus certain rights, the principal one being to revoke the charter if petitioner should fail to observe the teachings of Miletus. But nothing in that document gives Miletus any control over the assets or income of petitioner even upon dissolution or upon revocation of the articles. To the contrary, the articles expressly state that "[a]ll property, income, etc. of the society [the auxiliary] shall remain property of the society." While each member serves as an agent of the Church, membership can be revoked at will. In fact, the articles may be modified or altered by the consent of the organization's officers (the Parshalls) with only the written concurrence of Miletus. We hold on this record that petitioner is a separate entity from Miletus, *789 not covered by that Church's exempt determination. [14] Petitioner's status as an exempt organization must stand or fall upon its own organizational documents and operational activities. Basic Bible Church v. Commissioner,supra, is directly in point and controlling. To be recognized as exempt under section 501(c)(3), an organization must be both organized and operated exclusively for one or more of the purposes specified in that Code section. If the organization fails either one of the two tests, it is not exempt. Section 1.501(c)(3)-1(a)(1), Income Tax Regs.; Basic Bible Church v. Commissioner,supra;General Conference of the Free Church v. Commissioner,71 T.C. 920 (1979). Section 1.501(c)(3)-1(b) requires that the articles of organization expressly limit the purposes of the organization to exempt purposes and similarly limit the use of the assets to such purposes. On its face, the specimen articles, which we have accepted as petitioner's organizational document, [15] would satisfy the organizational test. However, the only assets revealed by the record to have been dedicated to petitioner's claimed exempt purposes are *790 the property and income of the Parshalls, allegedly transferred by their vow of poverty. But, that vow contained an express reservation or condition, permitting recapture by the Parshalls. Such recapture would have been triggered by the decision of the Iowa Supreme Court, in Parshall Christain Order, et al. v. Board of Review,et al.,315 N.W. 2d 798 (1982), that petitioner had failed to establish that it was a religious institution within the meaning of the Iowa exemption statute. If, therefore, petitioner ever received any assets, those assets were not effectively dedicated exclusively to exempt purposes so long as the Parshalls could disavow their vow of poverty in accordance with its terms and retake possession. See section 1.501(c)(3)-1 (b)(4), Income Tax Regs. Petitioner thus fails the organizational test. See Calvin K of Oakknoll v. Commissioner,69 T.C. 770 (1978), affd. per unpublished order 603 F.2d 211 (2d Cir. 1979); Stephenson v. Commissioner,supra; Owens v. Commissioner,T.C. Memo. 1982-671. Turning to the operational test, we similarly conclude that petitioner fails to meet the requirements of the regulations. Sections 1.501(c)(3)-1(c) and *791 (d), Income Tax Regs., provide in pertinent part that: Section 1.501(c)(3)-1(c)(2): (2) Distribution of earnings. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. For the definition of the words "private shareholder or individual", see paragraph (c) of § 1.501(a)-1. Section 1.501(c)(3)-1(d)(1)(ii): (ii) An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests. As we have found, the only members of petitioner were the Parshalls and their children. The property and income were available for and obviously were used for the benefit of Parshall and his family. Parshall was petitioner's *792 creator and chief steward. Under the express terms of the covenant, petitioner provided the family from its assets "housing, food, transportation, clothing, education & other proper needs as may from time to time arise * * *." There was no change in the family circumstances as a result of the creation of petitioner. Parshall's income and property remained available at his direction in the same fashion after December 31, 1975, as before. Petitioner was thus serving the private interests of its creator and his family. Basic Bible Church v. Commissioner,supra.See also, McGahen v. Commissioner,supra; and Stephenson v. Commissioner,supra.
Finally, petitioner has argued that respondent's criteria for exemption of a church from Federal income taxation under section 501(c)(3) are contrary to the First and Fifth Amendments. Petitioner's briefs are singularly unhelpful on this point. The constitutionality of respondent's application of section 501(c)(3) has been upheld. Christian Echoes National Ministry, Inc. v. United States,470 F.2d 849 (10th Cir. 1972), cert. denied 414 U.S. 864 (1973). See also, United States v. Holmes,614 F.2d 985 (5th Cir. 1980), involving Miletus Church, *793 Inc. Exemption from tax is "a matter of grace rather than right." Christian Echoes National Ministry, Inc. v. United States,supra, at 857. There is nothing in this record to sustain petitioner in these arguments. Having resolved every insufficiency in the administrative record in petitioner's favor, we conclude that respondent's determination is correct. For the foregoing reasons, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. It is not entirely clear in this case whether the issue is petitioner's initial qualification or continuing qualification. The examination was commenced by respondent in 1977. The determination letter recites that petitioner's records were examined for the year ended December 31, 1975, although it appears from the record that petitioner was not organized until December 31, 1975. We, therefore, construe this case to involve the initial qualification of petitioner as an exempt organization.
4. We note that Miletus, itself, was under investigation for the years 1975 through 1977 by respondent in 1980. See United States v. Holmes,614 F.2d 985↩ (5th Cir. 1980). 5. This record does not reflect any notification to respondent that Miletus claimed to have subordinate organizations earlier than a letter from David L. Holmes (Holmes) as Bishop of Miletus dated August 4, 1976, to the then Commissioner. ↩
6. If it were determined that petitioner were an integrated auxiliary of Miletus, or independently an exempt church, this would be immaterial.↩
7. Article V expressly stated that "[a]ll property, income, etc. of the society [the auxiliary] shall remain property of the society."↩
8. There is no satisfactory explanation of the absence from the record of petitioner's executed "articles" or "by-laws", especially in view of the requirements of Rule 210(b)(11)(ii). Neither is there a covenant executed by Mrs. Parshall, although such a document is required of each member.↩
9. One of respondent's grounds for his determination is the lack of an organizational document. Petitioner supplied to respondent both the blank forms and the executed covenant and vow of poverty. Since there is nothing to the contrary in the record, it is reasonable to assume that the missing articles were completed using the specimen form. Moreover, Parshall Christian Order, et al. v. Board of Review, et al.,315 N.W. 2d 798 (Iowa 1982), a state court proceeding involving the tax status of petitioner's property, refers to petitioner's by-laws as an existing document. Our assumption as to the existence of executed by-laws is further buttressed by petitioner's requested finding number 10 (petitioner's brief) that the documents provided (as outlined above) demonstrate that petitioner was organized as an exempt organization. Since we are convinced that such a document exists, we see no reason to provide petitioner with an opportunity for further resort to this Court, which probably would occur if we predicated our decision on the insufficiency or lack of organizational documents. We note parenthetically that respondent's 1981 determination letter refers to petitioner's "charter" but the only document in the record sometimes described as a "charter" is the "articles or by-laws."
10. In Parshall Christian Order, et al. v. Board of Review, et al.,supra,the court found as facts that Mr. and Mrs. Parshall moved from California to Iowa in 1973 with two teenage sons, purchased a large tract of land and in December 1975 founded petitioner, with headquarters on the farm. The Iowa court noted that all of petitioner's activities were attended solely by the family members, with a minor exception, and that the only members of the organization were the four members of the Parshall family. The Iowa court also noted that Parshall was employed as a flight engineer for United Airlines with a salary in 1979 of $48,000, from which no Federal or state income tax had been withheld.
11. Mr. and Mrs. Parshall filed a petition with this Court, which petition was dismissed for lack of jurisdiction. The petition asserted deficiencies against Mr. and Mrs. Parshall individually for the years 1975 and 1976. ↩
12. In this case involving a similar auxiliary of Miletus, we held that the wages earned by the individual who became a Miletus priest were taxable to the individual and that he had further failed to prove that the entity he had created was an exempt organization, contributions to which were deductible.↩
14. See, e.g., Woods v. Commissioner,T.C. Memo. 1982-653↩.
15. See footnote 8, supra.↩