Society for the Preservation of New England Anti-
quities *vs.* Tax Assessors of the City of Newport.

APRIL 4, 1939.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This is a petition under general laws 1923, chapter 60, sec. 15 as amended by public laws 1932, chapter 1945, sec. 4, brought by the petitioner, a Massachusetts corporation, against the tax assessors of the city of Newport,

to recover a certain tax claimed to have been illegally assessed. The case being at issue in the superior court and the parties having filed an agreed statement of facts, the action was thereupon certified to this court for hearing and determination in accordance with the provisions of G. L. 1923, chap. 348, sec. 4.

It appears in the petition that on March 1, 1937, the petitioner acquired the Maudsley-Pitman house, located on Spring street in the city of Newport; that thereafter it "restored said house, as far as practicable, to its original condition"; and that it has since used "those premises solely for the uses and purposes authorized by the act creating it and for the preservation of an antiquity and for the use of the public generally." Neither the petition nor the agreed statement of facts state what the historical background of the Maudsley-Pitman house is, or in what respect it is an antiquity, or what it contains, or how it is actually used by the public generally.

In June 1937, the city of Newport assessed a tax on the land and buildings of this property in the sum of $249.60, which the petitioner paid under protest on August 25, 1937, claiming that its property was exempted from taxation by its charter and by the provisions of G. L. 1923, chap. 58, sec. 2.

The provisions of the Massachusetts act incorporating the petitioner, which are pertinent in this case, are as follows: Section 1 creates the corporation "for antiquarian, historical, literary, artistic and monumental purposes, and for the purposes of preserving for posterity buildings, places and objects of historical and other interest. . . . It shall be exempt from taxation to the same extent as are . . . charitable corporations." We note at this point that the word "public" is not used in connection with the term "charitable corporations."

Section 3 provides that the corporation may "erect and maintain tablets, memorials, and monuments to commem-

orate persons, places and events, and may acquire and maintain collections of books, autographs, photographs, medals, coins and other objects of historic or public interest. It may provide a place or places for the preservation of the same ...."

Section 4 provides for the adoption of "such constitution, by-laws, rules and regulations" as the incorporators shall deem best for the admission, suspension and expulsion of members and for the conduct of the corporation's affairs.

Section 6 permits the corporation to classify its membership in different grades, and "declare the dues, duties and privileges of each grade. . . . All interest of any member of the corporation in its property shall terminate, and vest, in the corporation, upon his ceasing to be a member thereof ...."

Section 7 reads: "The corporation shall make no charge to the public for admission to any place owned or controlled by the corporation, in excess of such reasonable sums as in the aggregate may be found necessary to maintain the property there situated." In connection with this section we observe that it does not expressly provide that any place owned or controlled by the corporation shall be open to the public; and no provision of its constitution or by-laws, which appears in either the petition or the agreed statement of facts, expressly gives to the public the right, subject to reasonable regulations, to enter its premises. The ordinary meaning of the language of section 7 is that the charge to the public shall not be in excess of a certain amount *if* the corporation should decide to admit the public to its premises.

This last observation and the one which we made with respect to section 1 of the charter, that is, the absence of the word "public" before the term "charitable corporations" in the exempting clause of that section of the charter, are relevant and important in view of our statute in reference to tax exemption, upon which the petitioner relies. Before quoting from our statute, we further point out that the word

"education" or "educational" is not used in connection with the purposes for which the petitioner is incorporated or in any other part of the act of incorporation.

Our tax exemption statute—G. L. 1923, chap. 58, sec. 2, as amended by P. L. 1927, chap. 986—upon which the petitioner relies, exempts from taxation the buildings owned by "any incorporated *public* charitable institution, and the land upon which said buildings stand and immediately surrounding the same to an extent not exceeding one acre, so far as the same is used *exclusively for educational purposes*", and also "property especially exempt by charter." (italics ours)

The exemption clause in petitioner's act of incorporation has no binding effect in this state. It is clear to us that Massachusetts is free to adopt and follow any policy in the matter of taxation in general and of tax exemption in particular that it may deem just, and that Rhode Island can do likewise.

In *Providence & Worcester R. Co.* v. *Wright,* 2 R. I. 459, at page 464, this court says that our general assembly "has the entire control over the subject of taxation, to say what shall be taxed, and how much and what shall be exempt." At page 466 of that opinion, the court further says: "Taxation is a subject, on which each State has, and is entitled to have, their own views of justice and policy, and, where these views are carried out by legislation, the court are bound to give to this legislation its proper effect." This fundamental principle is tersely stated in *Woonsocket Hospital* v. *Quinn,* 54 R. I. 424, where, at page 428, this court says: "Exemption from taxation is to be determined not by the policy or the laws of other states but by the constitution and laws of this state."

The policy of this state in the matter of exemption from taxation is evinced in G. L. 1923, chap. 58, sec. 2. Our decision in the instant case must therefore rest on the language of our statute and not upon an exemption in petitioner's charter which is apparently based on Massachusetts stat-

utes, the provisions of which are not even set out in the agreed statement of facts.

The principal ground upon which the petitioner bases its claim for exemption from taxation is that it is a public charitable corporation created for educational purposes. It seeks to establish this claim by a series of inferences, arguing as follows. Starting with the fact that it is an incorporated institution, the petitioner claims that it is a *public* institution because, by section 3 of the act of incorporation, it is allowed to acquire and maintain collections of books, autographs, photographs, medals, coins, and other objects of "public interest", and, by section 7, it can charge the public only a limited sum for admission to any place that it owns or controls; further, that it is a *charitable* institution because its membership is not based on shares of stock, nor do its members derive any profit from its activities; and further, because the corporation was created for the *education* of the public in historical and antiquarian matters, one of its purposes being the "preserving for posterity, buildings, places and objects of historical and other interests."

This ingenious argument is not convincing. From what appears in the record before us, the corporation is not bound by any express provision in the act of incorporation to open its doors to the public. It is true that a limitation is placed on the corporation as to the sum it shall charge the public for admission, but it does not follow as a necessary implication that because of such limitation the corporation cannot exclude the public and restrict admission to its own members, if it should fix upon such policy.

The petitioner's contention that it is a charitable corporation because it has no stock and because its members derive no profit from its activities is not convincing to us. We entertain doubt as to whether the corporation is purely public without personal interest in its members, at least while they continue as members. Section 6 of the act of incorporation, which is the only information we have on

this point, provides that: "All interest of any member of the corporation in its property shall terminate, *and vest*, in the corporation, upon his ceasing to be a member thereof." (italics ours) If a member has no pecuniary interest or other proprietary rights in the property of the corporation, we fail to see why the act of incorporation should provide that his interest shall "vest" in the corporation when he ceases to be a member.

The petitioner, in order to bring itself within the scope of our tax exemption statute further argues that it was created for the education of the public in historical and antiquarian matters. As we have already pointed out the word "education" or "educational" is not to be found anywhere in the act of incorporation, and the use of the petitioner's property by the public is at best permissive and not obligatory upon the corporation, as far as that instrument is concerned. Furthermore, there is nothing in the agreed statement of facts before us which shows that the premises in question were in fact used exclusively for educational purposes.

An expectation that through its activities the public, in some indirect and indefinite way, may be educated in historical and antiquarian matters does not warrant the conclusion that the petitioner's property in this state is in fact used "exclusively for educational purposes", which the statute requires. If the petitioner's contention in this respect is sound, it is difficult to conceive of any incorporated body that seeks to interest the public in its activities, however remotely such activities may be connected with education, which could not reasonably claim that its real property was exempt from taxation under the statute.

In obedience to the provision of art. I, sec. 2 of our constitution, which provides that "the burdens of the state ought to be fairly distributed among its citizens", it is settled with us that laws exempting property from taxation are to be strictly construed. Exemption from taxation cannot be read into the statute by implication. Since a grant of exemption

is not to be presumed, any doubt or ambiguity must be resolved in favor of the public. The burden is upon the person claiming an exemption to show that he is within the terms of the statute. If two views are possible the court will adopt the view in favor of taxation, unless compelled to do otherwise because of long-continued conduct or prior decisions. *City of Providence* v. *Hall*, 49 R. I. 230.

The particular provisions of the statute now under consideration have been construed by this court in two cases which are of controlling force. In *Girls' Friendly Society* v. *Stafford*, 46 R. I. 29, the question at issue was whether land used in connection with a vacation home for girls during a portion of the summer months, at a small weekly charge, was exempt from taxation under the statute. This court denied the exemption and held that it was not the intention of the legislature, as expressed in the statute, to exempt from taxation any land or buildings of any incorporated public charitable institution, unless the property was used *exclusively* for educational purposes. The earlier case of *City of Pawtucket, for Opinion*, 24 R. I. 86, holds likewise. In that case a private school building was used in part as a dwelling-house for teachers in the school. Exemption from taxation was denied, the court holding that the building was not used exclusively for educational purposes, as the exclusive use required by the statute was of both land and buildings. See *St. Joseph's Church* v. *Assessors of Taxes*, 12 R. I. 19.

It is unnecessary for us to determine whether a foreign corporation is entitled to exemption under our statute, as the petitioner does not, in our opinion, come within its terms. Our decision, therefore, is for the respondents for costs.

The papers in the case with our decision certified thereon are ordered sent back to the superior court for the entry of final judgment on the decision.

*Sheffield & Harvey,* for petitioner.

*Jeremiah A. Sullivan,* City Solicitor, for respondents.