INTER-VARSITY CHRISTIAN FELLOWSHIP OF THE UNITED STATES OF AMERICA, Plaintiff-Appellant, *v.* ELMER J. HOFFMAN, County Treasurer for the County of Du Page, Defendant-Appellee.

Second District   No. 77-101

Opinion filed August 2, 1978.

Wayne R. Andersen and Burton E. Ericson, both of Burditt & Calkins, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This action is purportedly an appeal from three cases in the Circuit Court of Du Page County. Case No. 69 PT 31355 was an action by the People of the State of Illinois against Inter-Varsity Press, a division of Inter-Varsity Christian Fellowship of the United States of America (hereinafter Inter-Varsity) for the collection of 1968 personal property taxes. Case No. 70—843 G was a suit by Inter-Varsity for a perpetual injunction against the collection of personal property taxes. Lastly, case No. 72 PT 10977 was an action by the People against Inter-Varsity for the collection of 1970 personal property taxes. The transcript on cause 70—843 G has been furnished this court. On December 1, 1976, the trial court, stating that 70—843 G and 69 PT 31355 had been consolidated, denied

Inter-Varsity's prayer for injunction and found that Inter-Varsity was not entitled to a tax exemption as a charitable, religious or education corporation.

Both the People and Inter-Varsity have agreed in their briefs and at oral argument that the decision herein should apply to all three cases. However, that is not possible in view of the pleadings before us. We have a final order as to the two cases but we do not have any order relating to cause No. 72 PT 10977. It is, therefore, presumed that this cause is still pending in the Circuit Court of Du Page County. If such be the case, our decision herein is controlling as to the disposition of that case by proper proceedings in the circuit court.

The issues presented are (1) whether Inter-Varsity is a charitable organization, exempt from taxation by the provisions of section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, par. 500.7); (2) whether it is exempt from taxation under section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, par. 500.2) as a religious organization, the property of which is used exclusively for religious purposes; and (3) whether an unreasonable length of time elapsed between the hearing date and the date of judgment, entitling Inter-Varsity to a new trial. The final hearing on these cases took place on August 1, 1975, and the trial court did not render a decision until December 1, 1976, 16 months later. We need not reach this last issue in view of our decision herein.

Inter-Varsity was organized in 1941 as Inter-Varsity Christian Fellowship, the name subsequently being changed to Inter-Varsity Christian Fellowship of the United States of America. The object of this not-for-profit corporation is found in the charter thereof, reading as follows:

"The purpose of the Corporation is to establish, assist, and encourage at colleges, universities, nursing schools, and other comparable educational institutions in the United States of America groups of students and faculty members to witness to the Lord Jesus Christ as God Incarnate and have these major objections: (1) To lead others to personal faith in Christ as Lord and Saviour. (2) To help Christians grow toward maturity as disciples of Christ, by study of the Bible, by prayer and by Christian fellowship. (3) To present the call of God to the world mission of the Church; to help students and faculty to discover God's role for them."

In the hearing before the trial court the evidence disclosed that Inter-Varsity has about 900 affiliated student chapters at colleges in the United States. The headquarters of Inter-Varsity is located in Madison, Wisconsin, and the literature division, which is the subject of this controversy, is located in Downers Grove, Illinois. The literature division

prepares but does not print numerous religious publications. The cost of publication determines the cost of each item. The majority of the publications thus produced are sold by Inter-Varsity but approximately 10% are given away, some of these to prisons and students on campus. Other books are sold at half price to individuals with the idea that they will then give the books away. The proceeds from the sale of the publications are used to publish and disseminate additional literature. No net profit, per se, is realized on the sale of the publications. Indeed, the cost of the literature appears to consistently exceed the revenue from its sale. Donations to the literature division account for whatever apparent "profit" is generated by the division. In this regard we note that donations constitute a considerable portion of the annual budget of Inter-Varsity. They are received from over 300,000 donors, including churches of approximately 50 different denominations. In illustration, the record reveals that in 1974 these donations, gifts and grants made up 55% of Inter-Varsity's total revenue of $5,652,282. Finally, as to Inter-Varsity's corporate structure, we note that it has neither shareholders, dividends, capital stock nor accumulations for future dissemination.

■■ We begin our analysis with the premise that statutes providing exemption from taxation shall be strictly construed because under the Illinois Constitution all property is subject to taxation unless exempted by the legislature.

Section 3 of article IX of the Illinois Constitution of 1870 provided that:
> "The property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law."

In the 1970 Constitution, section 6 article IX provides:
> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes."

Section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, par. 500.2) exempts from taxation "[a]ll property used exclusively for religious purposes, or used exclusively for school and religious purposes * * *." Section 19.7 of the Act (Ill. Rev. Stat. 1967, ch. 120, par. 500.7) exempts from taxation:
> "All property of institutions of public charity, all property of beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or

beneficient purposes, and not leased or otherwise used with a view to profit;* * *."

We intentionally refrain from discussing cases cited by the parties involving the tax-exempt status of homes for the elderly as we feel that the law developed therein does not aid in the resolution of this case.

One case which we find to be applicable is *Congregational Sunday School & Publishing Society v. Board of Review* (1919), 290 Ill. 108, 125 N.E. 7. In that case the supreme court considered the exemption of a publishing house which claimed exemption under the provisions of the then constitutional and statutory exemptions for religious and charitable organizations. The court held that the religious and charitable exemptions were so closely associated that the court considered them together, which we also do in this case. The State has contended herein that, inasmuch as profits are made from the sale of the literature, this is a nonexempt operation of a charitable or religious organization. However, we note that in *Congregational Sunday School* the supreme court held that it was not the use to be made of the profits, but the nature of the business done that should be considered in deciding the question of liability of a charitable institution's property to taxation. The court also stated that an institution did not lose its charitable character and its consequent exemption by reason of the fact that those recipients of its benefits who were able to do so were required to pay.

As the State points out, each individual case of claimed tax exemption must be determined upon the facts presented. In our view the facts presented here definitely show that Inter-Varsity is both a religious and a charitable organization within the meaning of sections 19.2 and 19.7 of the Revenue Act. We find its operation and objectives very similar to that considered by the supreme court in *Congregational Sunday School.* In both instances spreading the gospel was the major objective, and the publications involved were clearly aimed at accomplishing that objective. The fact that the books were sold does not detract from the tax exempt status of the operations. We are also of the opinion that the fact that Inter-Varsity's literature department has a considerable income which is partly used for salaries, staff support, Federal FICA and employee hospitalization does not detract from the religious and charitable nature of the organization. Obviously a nationwide organization has operating expenses and it is not to be expected that its employees will serve without recompense.

The State has also argued that the case of *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 111 N.E.2d 519, is controlling herein because Inter-Varsity receives an alleged profit on the sale of its publications. In *Scripture Press* the supreme court held that section 19.2 of the Revenue Act did not apply to the plaintiff foundation and that it

therefore was not exempt from the provisions of section 2(f)(6)(G) of the Unemployment Compensation Act. (Ill. Rev. Stat. 1949, ch. 48, par. 218.) Scripture Press was initially organized in 1932 as a for-profit corporation controlled by one V. E. Cory. It was later reorganized in 1945, as a not-for-profit corporation, but was controlled by its previous owner. In reaching its decision, the supreme court found the controlling question to be whether the foundation was organized and operated exclusively for religious purposes or whether part of its net earnings would inure to the pecuniary benefit of an individual or shareholder. The court observed that:

> "Our attention has been called to no decision of this court attempting to lay down an all-inclusive definition or specificiation of what constitutes a religious purpose * * *." 414 Ill. 339, 352, 111 N.E.2d 519, 526.

The court went on to find that although the corporate powers of Scripture Press were to be devoted to Christian missionary, educational and other evangelical efforts, the record did not disclose that the foundation maintained any missionaries or organized and supported any evangelical movement. The supreme court specifically stated that an otherwise exempt institution may have income from its property which would not destroy its tax-exempt status. However, the court also observed that the income from the operation of Scripture Press was not turned over to any religious society, church or organization. To the contrary, the financial mechanism of the foundation yielded an overall substantial profit flowing into capital surplus which indicated a secular rather than religious operation. Additionally, the supreme court pointed out that upon dissolution of Scripture Press nothing in its by-laws required the transfer of capital surplus to an exclusively religious organization. The assets could be disposed of by the members and officers as they saw fit without any limitation whatsoever. The supreme court found Scripture Press to be a:

> "* * * not-for-profit corporation organized and operated for the purpose of rendering service to religious organizations on a business basis, and is therefore organized and operated for secular purposes as opposed to exclusively religious purposes." 414 Ill. 339, 358, 111 N.E.2d 519, 529.

We find that Inter-Varsity differs significantly from Scripture Press in many specific and vital regards. First, Inter-Varsity was organized initially as, and has continued to be, a non-for-profit corporation dedicated by its charter to exclusively religious and charitable purposes. Second, the capital surplus, if any, remaining after the dissolution of Inter-Varsity must, by the operation of the corporate charter, be distributed to an entity organized and operated for religious and

charitable purposes similar to those of Inter-Varsity itself and not to the benefit of any private person. Third, Inter-Varsity supports over 100 missionaries within the United States and serves the needs of a growing evangelical movement. Fourth, Inter-Varsity's publications are sold at cost or less, and any revenue in excess of expenditures is the sole result of donations. Fifth, Inter-Varsity provides a substantial amount of materials free or below cost to groups which are targeted for its message.

■■ For the reasons stated above we are more than satisfied that Inter-Varsity was, and is a religious and charitable organization and is, therefore, entitled to tax-exempt status under sections 19.2 and 19.7 of the Revenue Act of 1939. Accordingly we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and BOYLE, J., concur.