**CHURCH OF PAN, INC.**

v.

**John H. NORBERG, Tax Administrator.**

**No. 84–42–M.P.**

Supreme Court of Rhode Island.

May 6, 1986.

A. Frazier, Providence, for plaintiff.

Marcia McGair Ippolito, Robert M. Geruso, Div. of Taxation, for defendant.

## OPINION

MURRAY, Justice.

This case, involving the eligibility of the plaintiff, Church of Pan, Inc. (Church of Pan or church), for exemption from payment of state sales and use taxes, is before this court pursuant to a common-law writ of certiorari. The plaintiff, claiming entitlement to tax-exempt status as a church or other religious organization pursuant to G.L.1956 (1980 Reenactment) § 44–18–30(E), sought such an exemption from the Division of Taxation of the State of Rhode Island. The defendant tax administrator denied the plaintiff's application. In so doing, the tax administrator adopted the conclusion of a hearing officer of the division that the plaintiff was not operated exclusively for religious purposes and therefore was not within the exemption provision of § 44–18–30(E).

The church subsequently appealed from the tax administrator's decision to the Superior Court. The Superior Court affirmed. The plaintiff thereafter petitioned this court for a writ of certiorari. This court initially denied the petition. However, upon plaintiff's motion for reconsideration, although we found that the church should have sought judicial review of the tax administrator's decision in the District Court rather than in the Superior Court, we granted a writ of common-law certiorari.[1] In order to secure an adequate factual predicate for our determination of the legal issues presented, we remanded the matter to the Superior Court for an evidentiary hearing, after which the trial justice was to make findings of fact and conclusions of law. We expressly stated that we did not wish the matter to rest upon the record developed before the hearing officer of the Division of Taxation.

---

1. *Church of Pan, Inc. v. Norberg,* 445 A.2d 294 (R.I.1982).

After conducting an evidentiary hearing, the trial justice concluded that the Church of Pan was an organization operated exclusively for religious purposes within the tax-exempt category set forth in § 44–18–30(E). Pursuant to our instructions, the entire record subsequently was returned to this court for review.

The Church of Pan was founded in 1971 by Kenneth A. Walker, who presently serves as the church's senior minister. Neither Mr. Walker nor any other member of the group's ministry has any formal training in theology.

The church's doctrines include belief in "the natural god." Central to the organization's teachings is a duty to serve this god through the study, care, and preservation of nature. The plaintiff's primary activities are forestry, wildlife care and recycling programs in which both members and nonmembers participate. In addition, the Church of Pan makes monetary contributions to such organizations as the Audobon Society and the Sierra Club.

The congregation's approximately twenty-five members are free to adhere to other religious doctrines. In fact, many are also practicing members of other religious organizations.

The Church of Pan conducts monthly services. Such activity consists of a general discussion, usually forty-five minutes to one hour in length, on a topic chosen by the senior minister. No hymns are sung, no prayers are recited, and there are no scripture readings.

The organization has no church building or other formal place of worship. Weather permitting, monthly services are conducted in a meadow or in woodlands on 200 acres of leased property. This parcel, located in the town of Foster, is leased to the church by Mr. Walker. In inclement weather, services are held indoors wherever space is available.

The plaintiff maintains approximately 150 acres of the Foster property as a wildlife and ecosystem preserve. The organization subleases the remaining 50 acres to the Dyer Woods Nudist Campground. The church derives approximately one-half of its income from this subleasing arrangement. The plaintiff also shares office space with the camp. However, the church does not actively participate in the campground's management, nor is there any commingling of funds of the two entities.

Section 44–18–30(E) exempts from sales-and-use-tax liability "churches * * * and other institutions or organizations operated exclusively for religious * * * purposes." It is well settled that according tax-exempt status to religious organizations is not violative of either the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, or of article I, section 3, of the Rhode Island Constitution, as long as no religion or religions are favored over others. *Walz v. Tax Commission of the City of New York*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *General Finance Corp. v. Archetto*, 93 R.I. 392, 176 A.2d 73 (1961), *appeal dismissed*, 369 U.S. 423, 82 S.Ct. 879, 8 L.Ed.2d 6 (1962). *See, e.g., Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

■ A taxpayer claiming entitlement to a statutory tax exemption has the burden of proving it falls within the terms of the statute. *American Hoechst Corp. v. Norberg*, 462 A.2d 369, 372 (R.I.1983). Therefore, when, as in the instant matter, a taxpayer seeks tax-exempt status pursuant to § 44–18–30(E) as a church or other religious organization, it must prove that it is operated exclusively for religious purposes. The mere fact that the claimant characterizes itself as such is not determinative. The court is permitted to inquire into the true purposes for which the organization was established and is conducted. *Watchtower Bible and Tract Society of New York, Inc. v. Lewisohn*, 35 N.Y.2d 92, 97, 315 N.E.2d 801, 803, 358 N.Y.S.2d 757, 759 (1974); *In re Religious Society of Fami-*

*lies,* 73 Misc.2d 923, 924, 343 N.Y.S.2d 159, 161 (1973), *aff'd,* 75 A.D.2d 1004, 429 N.Y. S.2d 321, *appeal dismissed,* 51 N.Y.2d 768, 432 N.Y.S.2d 1031 (1980). *See also Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15, 25 (1972). Such an inquiry should include an examination of the actual activities of the organization and should not be limited to an examination of the organization's statement of purpose. *Crusade for Christ, Inc. v. Town of New Lebanon,* 50 Misc.2d 774, 777, 271 N.Y.S.2d 886, 890 (1966), *aff'd,* 36 A.D.2d 247, 320 N.Y.S.2d 164 (1971); 31 N.Y.2d 765, 290 N.E.2d 440, 338 N.Y.S.2d 440 (1972).

The phrase "religious purposes" is not defined in § 44–18–30(E). Further, we have not previously had occasion to consider the meaning of the phrase as employed therein. However, "religion," as utilized in other contexts, has traditionally been defined as one's views of one's relationship with, and obligations to, a supreme being. *See, e.g., Davis v. Beason,* 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637, 640 (1890), in which the Court stated that "religion," as used in the First Amendment, "has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." In *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837 (Mo. 1977), *appeal dismissed,* 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978), the Missouri Supreme Court, in addressing the issue of whether a taxpayer qualified for a tax exemption applicable to property "used exclusively for religious worship," cited, with approval, the definition of religion set forth by the United States Supreme Court in *Davis, supra. See also United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and *Berman v. United States,* 156 F.2d 377 (9th Cir.1946) (conscientious-objector cases in which the courts discussed a *Davis-* based statutory definition of "religious training and belief"). Organizations operated exclusively for religious purposes must be distinguished from those organizations dedicated primarily to the furtherance of philosophical, scientific, sociological, ecological, charitable, or political principles. *Missouri Church of Scientology,* 560 S.W.2d at 840; *In re Religious Society of Families,* 75 A.D.2d 1004, 1005, 429 N.Y.S.2d 321, 322 (1980); *Yakima First Baptist Homes, Inc. v. Gray,* 82 Wash.2d 295, 301, 510 P.2d 243, 247 (1973). *See also Wisconsin v. Yoder,* 406 U.S. at 215–16, 92 S.Ct. at 1533, 32 L.Ed.2d at 25.

A determination of whether an applicant for tax-exempt status is operated exclusively for religious purposes requires an examination of all facts presented. *Inter-Varsity Christian Fellowship of the United States v. Hoffman,* 62 Ill.App.3d 798, 801, 19 Ill.Dec. 941, 949, 379 N.E.2d 813, 816 (1978). In *Gott v. Norberg,* 417 A.2d 1352 (R.I.1980), we had occasion to consider whether the Watch Tower Bible and Tract Society was within the terms of a Pennsylvania statute that conferred tax-exempt status on societies organized exclusively for religious purposes. The tax administrator had determined that the Watch Tower Society was not organized exclusively for such purposes. In finding that the administrator's decision was unsupported by the evidence, we noted that the administrator had disregarded the holding of the New York Court of Appeals in *Watchtower Bible and Tract Society of New York, Inc. v. Lewisohn,* 35 N.Y.2d 92, 315 N.E.2d 801, 358 N.Y.S.2d 757 (1974). There, the court engaged in an examination of the facts and concluded that the society was organized and operated exclusively for religious purposes within the meaning of a New York tax-exemption statute. Noting that the New York and Pennsylvania statutes outlined the same criteria for determining tax-exempt status, we stated that the "New York court's reasoned application of the 'exclusively religious' standard [is] * * * suggestive of a result here." *Gott v. Norberg,* 417 A.2d at 1363 n. 15.

In *Ideal Life Church of Lake Elmo v. County of Washington,* 304 N.W.2d 308 (Minn.1981), the court addressed the issue

of whether an organization seeking a property-tax exemption was a "church," as the term was employed in state constitutional and statutory-exemption provisions. Consistent with the lower court's decision, the Minnesota Supreme Court utilized what it described as a "multiple-factual-analysis test." The court stated that the proper test for determining whether an organization qualifies as a "church," and therefore as a tax-exempt entity, requires an analysis of all of the facts and circumstances of each particular case. *Id.* at 315. The facts deemed relevant by the court in disposition of the matter before it were as follows: (1) the organization's primary motive in organization and operation was tax avoidance; (2) the group's doctrine and beliefs were intentionally vague and nonbinding upon its members; (3) members freely continued to practice other religions; (4) the group had no formally trained or ordained ministry; (5) the organization had no sacraments, rituals, education courses, or literature of its own; (6) the "church" conducted no liturgy other than simple meetings which resembled mere social gatherings or discussion groups rather than religious worship; (7) the organization was not an institution which advanced "religion," as that term is commonly understood, as a way of life for all men; and (8) members were not required to believe in any supreme being or beings. Based upon an analysis of these factors, the court concluded that the Ideal Life Church was not a church within the meaning of the state's tax-exemption provisions.

We find that an application of the multiple-factual-analysis test is appropriate in the instant case. The trial justice erroneously failed to employ such a test. In finding that the Church of Pan qualified for a tax exemption as an organization operated exclusively for religious purposes, the trial justice relied on the testimony of a sociologist who, relying on his own interpretation of § 44–18–30(E), concluded that plaintiff was within the terms of the statute. However, consideration of all of the facts presented mandates a contrary conclusion. Undertaking a multiple-factual-analysis, we find that the taxpayer has not met its burden of demonstrating its entitlement to tax-exempt status.

◼ In *Ideal Life Church of Lake Elmo*, the applicant's primary motive in organization and operation was tax avoidance. The instant case is distinguishable in that plaintiff's motives and the sincerity of its beliefs are not in question. However, the facts of the two cases are similar in several other aspects. As in *Ideal Life*, the church's members are free to continue to practice other religions. The congregation has neither any formally trained or ordained ministry nor any sacraments, rituals, or formal education courses. Monthly services consist simply of a general discussion rather than religious worship. During the services no hymns are sung, no prayers are recited, and there are no scripture readings.

The organization's tenets and activities, although admirable, are primarily secular rather than religious. The plaintiff's activities, which include forestry, wildlife care, recycling programs and monetary support of environmental organizations, are best described as environmental and conservational programs. Such activities do not advance religion, as that term is commonly understood. The organization's purpose is primarily the preservation of the environment, any religious connotation or purpose is merely incidental to this secular purpose. *See, e.g., Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837 (Mo.1977); *In re Religious Society of Families,* 75 A.D.2d 1004, 429 N.Y.S.2d 321 (1980). The Church of Pan, not operated exclusively for religious purposes, therefore is not entitled to tax-exempt status pursuant to § 44–18–30(E).

Accordingly, the church's petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, the judgment of the Superior Court is reversed, and the record in the case is remanded to the Supe-

rior Court with our decision endorsed thereon.[2]

---

**2.** In view of the de novo hearing accorded by the Superior Court on remand, we find it unnec- essary to address plaintiff's allegations of error by the tax administrator.