## RHODE ISLAND CATV CORPORATION

v.

**R. Gary CLARK, Tax Administrator for the State of Rhode Island.**

## TIMES MIRROR CABLE TELEVISION OF RHODE ISLAND, INC.

v.

**R. Gary CLARK, Tax Administrator for the State of Rhode Island.**

No. 86–321 M.P.

Supreme Court of Rhode Island.

May 20, 1988.

Dennis J. Roberts, II, Providence, for plaintiff.

Bernard J. Lemos, Marcia McGair Ippolito, Div. of Taxation, Providence for defendant.

## OPINION

**WEISBERGER, Justice.**

This case comes before us on the petition for certiorari of the Tax Administrator for the State of Rhode Island to review a judgment of the District Court of the Sixth Division that reversed deficiency assessments made by the tax administrator against Rhode Island CATV Corporation and Times Mirror Cable Television of Rhode Island, Inc. (taxpayers), in the amounts of $52,038.18 and $54,143.72, respectively. We affirm. An agreed statement of facts served as the factual record in the proceedings below and may be summarized as follows.

The taxpayers, two Rhode Island corporations, collectively provide cable-television services to customers in the cities of Providence, Pawtucket, North Providence, as well as in Kent county. Their customers receive these services through cable lines that extend from each of the company's main processing stations, along utility poles, and eventually into the subscribers' homes. The cables are then connected to a converter, which is, in turn, connected to the subscribers' television sets. The converters are devices that permit the customers to view cable-television programs on their own television sets. The taxpayers must go into the home of each new customer to connect the cable from the utility pole to the converter and the converter to the television set. All subscribers are charged a one-time installation charge, which appears on the first bill received by the subscribers. This installation charge is separately stated from the monthly fee.

The installation charge, however, only partially defrays the cost of installation. The regular monthly fees charged to all subscribers include within them the remaining costs for installation, amortized over a longer period. This part of the monthly fee is not separately stated on each bill. The taxpayers keep the initial installation charge low so as to encourage new cable-television business.

The Rhode Island Division of Taxation (division) issued notices of deficiencies to the taxpayers based upon the division's determination that the separately stated installation charges were subject to sales tax pursuant to G.L. 1956 (1980 Reenactment) § 44–18–18. The taxpayers paid the assessed deficiencies and requested a hearing to contest the matter. A hearing on both cases was held and resulted in the conclusion that the taxes and penalties assessed

against the taxpayers were correct. This conclusion was upheld in a final decision of the tax administrator.

The taxpayers then filed complaints in Sixth Division District Court, appealing the final decision of the tax administrator. The trial judge reversed the decision of the tax administrator holding that the charges for installation of the converters needed to gain access to cable television services falls within a sales tax exemption provision found in § 44–18–12(C), as amended by P.L. 1981, ch. 151, § 1.[1] The exemption provides that the term "sale price" does not include "[t]he amount charged for labor or services rendered in installing or applying the property sold * * * when such charge is separately stated by the retailer to the purchaser." *Id.*

■ Our review of the District Court's decision reversing the sales tax assessments on the installation charges for cable-television services is confined by G.L. 1956 (1984 Reenactment) § 42–35–16, as amended by P.L. 1984, ch. 167, § 4, to a review of any questions of law involved. This review "properly includes questions of law involving the applicability of a statute to undisputed facts." *Hasbro Industries, Inc. v. Norberg,* 487 A.2d 124, 126 (R.I. 1985) (quoting *George, Inc. v. Norberg,* 444 A.2d 868, 870 (R.I. 1982)). The sole issue concerns the proper meaning of the term "property sold" contained in the provisions of § 44–18–12(C), relating to exemptions from the definition of the term "sale price." The tax administrator first argues that the taxpayers are purveyors of intangible services and that by a plain reading of the statute the Legislature intended only to exempt from the definition of the term "sale price" installation costs associated with the sale of tangible personal property. After reviewing the record, we feel this argument is without merit.

■ Under § 44–18–18, a sales tax is imposed of 6 percent of the gross receipts of retail sales in Rhode Island. The term "gross receipts" is defined as "the total amount of the sale price * * * of the retail sales of retailers." Section 44–18–13. The term "sale price" is defined as:

"[T]he total amount for which tangible personal property is sold or leased or rented, *and the total amount charged for the furnishing or distributing of* electricity, natural gas, artificial gas, steam, refrigeration, water, telephone, telegraph, cable, and radio message service, community antenna television subscription television and *cable television service,* and the total amount charged for the rental of living quarters in any hotel, rooming house or tourist camp, valued in money, whether paid in money or otherwise, including all of the following:

(A) Any services that are a part of the sale, valued in money, whether paid in money or otherwise.

(B) All receipts, cash, credits, and property of any kind.

(C) Any amount for which credit is given to the purchaser by the seller." (Emphasis added.) Section 44–18–12.

However, exempted from the definition of "sale price," as relied upon by the trial judge, is "[t]he amount charged for labor or services rendered in installing or applying the property sold * * * when such charge is separately stated by the retailer to the purchaser." Section 44–18–12(C).

There is nothing in the statutory scheme that suggests that the installation costs of cable-television service were not intended to be included in the exemption found in § 44–18–12(C). The section clearly states that the sales price does not include charges for installation of "property sold." Property in its broader sense cannot be said to imply only tangible personal property, as contended by the tax administrator.

Under the dictates of § 44–18–12 and § 44–18–7(J), as amended by P.L. 1981, ch. 151, § 1, the providing of cable-television

---

**1.** General Laws 1956 (1980 Reenactment) 44–18–12(C), as amended by P.L. 1981, ch. 151, § 1, provides in full that sale price shall not include "[t]he amount charged for labor or services rendered in installing or applying the property sold or for making alterations to wearing apparel in connection with the sale thereof, when such charge is separately stated by the retailer to the purchaser."

services by the taxpayers to their subscribers clearly constitutes taxable sales. The property sold by the taxpayers whether viewed as the service itself or additionally as the lease or rental of the cables and converters, is generally taxable. However, the separately stated charge for the installation of the cables and converters is a one-time cost incident to the "property sold" and thus fits squarely within the exemption of § 44–18–12(C).

" '[W]hen the language of a statute is clear and unambiguous and does not contradict an evident legislative purpose, there is no need for statutory construction or the use of interpretive aids. The statute must be applied literally by giving the words their ordinary and plain meaning.' " *E.g., Lawrence v. Anheuser-Busch, Inc.,* 523 A.2d 864, 872 (R.I. 1987). The language of the statute under consideration is clear in that the installation exemption of § 44–18–12(C) applies to the one-time charge for installing the cables and converters necessary to receive cable-television service. Since by the plain and clear language of the statute the installation charges are exempt from sales tax, we need not resort to the numerous canons of statutory construction offered by the tax administrator to ascertain the legislative intent behind § 44–18–12(C). The other issues raised by the tax administrator in his brief regarding the interpretation of the statute need not be separately addressed since all are comprehended in our discussion of the first issue. "Our case law makes it clear that when statutory language is clear and unambiguous, there is nothing left for interpretation and the statute must be read literally." *Quigley v. Town of Glocester,* 520 A.2d 975, 979 (R.I. 1987) (citing *Sugarman v. Lewis,* 488 A.2d 709 (R.I. 1985)).

For the reasons stated, the petition for certiorari is denied and the writ heretofore issued is quashed. The judgment of the District Court is affirmed, and the papers in the case may be remanded to the District Court with our decision endorsed thereon.