ROBERT DERECKTOR OF RHODE
ISLAND, INC.

v.

EMPLOYMENT SECURITY BOARD
OF REVIEW, DEPARTMENT OF
EMPLOYMENT SECURITY, et al.

No. 88–530–M.P.

Supreme Court of Rhode Island.

March 29, 1990.

Donald P. Rothchild, Christophe H. Little, Andrew B. Prescott, Tillinghast, Collins & Graham, Providence, Albert J. Gaynor, New York City, for plaintiff.

Joseph A. Doorley, Jr., William G. Brody, Powers, Harsch & Kinder, Inc., Louis J. Vallone, Providence, Thomas B. Coffey, Jr., Cranston, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on a petition for certiorari to review a judgment entered in the District Court affirming the decision of the Employment Security Board of Review granting union employees unemployment compensation because of a lockout. We affirm the decision of the District Court of the Sixth Division. The facts of the case insofar as relevant to this petition are as follows.

On May 24, 1988, a three-year collective-bargaining agreement expired between Robert Derecktor of Rhode Island, Inc. (the company) and the union employees of the company participating in the bargaining unit represented by United Steelworkers of America, AFL–CIO, Local No. 9057 (union employees). The company owns and operates a shipyard located in the State of Rhode Island where approximately 400 union employees work. From March 9, 1988, up until May 24, 1988, the parties had been negotiating the terms of a new collective-bargaining agreement.

On the final day of the existing collective-bargaining agreement, representatives from both parties were negotiating a new contract in a company building. During these last-minute negotiations before the contract expired, the company president Robert Derecktor (Derecktor) entered the

company building and interrupted the on-going negotiations. In an emotional state, he demanded to know why negotiations were still going on and ordered the company representatives to present to the union employees his final offer for a collective-bargaining agreement. Thereafter he directed them to cease all negotiations.

Prior to voting on Derecktor's final offer, the union offered to extend the existing contract to provide for interim employment while negotiations for a final agreement continued. The offer was rejected on behalf of the company. Moreover, the company representatives followed Derecktor's instructions and ceased all further negotiations for the day.

The offer extended by Robert Derecktor as president and on behalf of the company was not for interim employment under an extension of the existing contract. Rather the offer he made was for a final, long-term collective-bargaining agreement. The union employees overwhelmingly voted to reject this offer because, according to union representatives, it was ambiguous and could have resulted in considerable reductions in pay and benefits as well as losses in seniority. The terms of Derecktor's final offer were viewed as very one-sided by the union, with ultimate discretion and control resting with the company in respect to the terms and conditions of employment.

Before the union employees met to vote on Derecktor's final offer on the afternoon of May 24, 1988, the company had already taken steps to prevent access to its shipyard. Contrary to custom and practice, the gates to the shipyard were closed, chain-locked, and in some instances barricaded with what appeared to be pieces of mooring or railroad ties. The company also caused the windows of its building where negotiations had taken place to be boarded over. The larger of the two employee parking lots was blocked off. Testimony given at a later hearing further indicated that union employees were not allowed in the shipyard in the late afternoon, either to work on the third shift or to retrieve their own tools and other personal items. In the early-morning hours on May 25, 1988, the union employees began to picket the company outside its gates.

Because no further negotiations were held and because they were denied access to the shipyard, many of the union employees filed with the Department of Employment Security (Department) for unemployment compensation under G.L.1956 (1986 Reenactment) § 28–44–16(b), alleging a lockout by the company. The Director of the Department denied all benefits, finding that a strike, not a lockout, had taken place. The union employees appealed their right to unemployment benefits to the Employment Security Board of Review (Board) under § 28–44–45. After consolidating the appeals of the union employees, the Board found that the union employees were entitled to unemployment benefits because the overt actions of the company in locking and barricading the shipyard constituted a physical lockout under § 28–44–16(b). The Board further found that the company never offered to extend the contract under § 28–44–16(b)(2). Under G.L.1956 (1988 Reenactment) § 42–35–15, the company appealed the Board's decision to the District Court of the Sixth Division. A judge of the District Court affirmed the Board's decision.

The plaintiff's petition for certiorari was granted by this court. Under § 28–44–55 our task is to determine whether the District Court was justified in affirming the decision of the Board of Review that the union employees were entitled to unemployment benefits under § 28–44–16(b) because of a company lockout. Our review of the case is limited to a determination of whether there was competent evidence in the record to support the decision and whether the conclusions of law were correct. Section 42–35–15; *see Berberian v. Department of Employment Security, Board of Review*, 414 A.2d 480, 482–83 (R.I.1980). For the reasons set forth below, we find that no errors of law were committed by the District Court and that the evidence overwhelmingly supports its decision affirming the Board's determination that an actual physical lockout of the union employees took place.

The controlling statute in this case is § 28–44–16, which reads in pertinent part:

"Labor disputes.—(a) An individual shall not be entitled to benefits if he became unemployed because of a strike or other industrial controversy in the establishment in which he was employed; Provided,

That this section shall not apply if it is shown to the satisfaction of the director that the claimant is not a member of the organization or group responsible for the labor dispute and is not participating in or financing or in any way directly interested in the labor dispute.

(b) *Lockouts.*—Notwithstanding the provisions of subsection (a) of this section, an individual shall be entitled to benefits if his unemployment is the result of his employer's withholding of employment for the purpose of resisting collective bargaining demands or gaining collective bargaining concessions, unless:

(1) The claimant's employer is a member of a multiemployer collective bargaining group and the lockout is in response to a strike at another member of that multiemployer collective bargaining group, or

(2) The claimant's employer establishes to the satisfaction of the director that it has offered to the labor organization representing the claimant an extension of then existing wages, hours and working conditions, including enforceable no strike and no lockout prohibitions, for up to three (3) days and the lockout is in response to the labor organization's refusal to execute such an extension."

Limiting our review to an examination of the law and facts, we are persuaded that under § 28–44–16(b), an actual physical lockout of the union employees took place on and after May 24, 1988. The record suggests that during the morning of May 24, 1988, Derecktor entered the place of negotiations in an emotional state. He directed the company negotiators to present his last offer for a collective-bargaining agreement to the union and ordered that all further negotiations cease. The record further indicates that in response to Derecktor's conduct and orders, company representatives were no longer willing to negotiate and also refused an offer made by the union to extend the existing contract pending resolution of the matter. For the reasons already stated, the union employees overwhelmingly rejected Derecktor's final offer. The Board specifically concluded that "as of 12:00 AM [sic], May 25, 1988, there were no existing conditions of employment under which the claimants could return to work."

The record further indicates that prior to the time the union employees voted on and rejected Derecktor's final offer for a replacement collective-bargaining agreement, the company took steps to deny union employees access to its shipyard. The record is replete with evidence indicating that during the afternoon of May 24, 1988, before the union convened to vote on Derecktor's offer, shipyard gates were chain locked and in some instances barricaded. The entrance to the larger employee parking lot was blocked off. Moreover, it is undisputed that prior to the union vote, the windows of the company building where negotiations had taken place were boarded up by the company. Although the company attaches a different motivation to its actions than do defendants, our task is not to weigh the evidence but only to determine whether any legally competent evidence exists that supports the decision under review. *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d at 482 (citing *Prospecting Unlimited, Inc. v. Norberg*, 119 R.I. 116, 124, 376 A.2d 702, 706 (1977); *Lemoine v. Department of Mental Health, Retardation & Hospitals*, 113 R.I. 285, 288, 320 A.2d 611, 613 (1974)).

The company alleges that the District Court committed error in upholding the Board's finding of a lockout when the Board failed to consider under § 28–44–47 additional evidence not presented to the director. In its decision the Board stated:

"There was some evidence presented relating to an offer made by the employer some weeks after the strike began whereby the claimants might *return to*

*work under the conditions outlined in [the] 'last offer'* pending resolution of the contract negotiations. As matters of fact and law surrounding the issue had not been addressed by the Director and are not now before the Board, we are not now in a position to make any specific findings or conclusions in that regard." (Emphasis added.)

■ Specifically, plaintiff contends that either the Board did not know it had discretion under § 28-44-47 to consider the new evidence or the Board failed to state in its decision the reasons for its discretionary refusal to give it consideration. In either event the company alleges that the Board's failure to consider the evidence prevented meaningful review of its decision by the District Court. Assuming, without deciding, that the Board acted in error under either of the company's theories, we find that the Board's conduct constituted harmless error.

The additional evidence presented by company but not considered by the Board concerned offers made by the company in June 1988. A close examination of the documentary and testimonial evidence given by plaintiff demonstrates that the offers extended by the plaintiff were not for an extension of the previously expired contract providing for interim employment under § 28-44-16(b)(2) while negotiations continued. Rather, according to the testimony of Allen Cameron, general manager of the company, the June offers of employment were for nothing more than employment under the terms of the final offer previously made by Derecktor and rejected by the union employees on May 24, 1988. This finding is corroborated by the Board's characterization of the offer as the "last offer." Had they accepted this offer made for the second time, the union employees would have done nothing short of surrendering and succumbing to the demands of the company. We note that plaintiff company's second extension of the same offer to then out-of-work union employees tends to reinforce the finding that the company's conduct locked out the union employees "for the purpose of resisting collective bargaining demands or gaining collective bar-gaining concessions" within the meaning of § 28-44-16(b). Therefore, evidence of these offers tends to militate against plaintiff company's theory of the case. Consequently the decision of the Board not to consider this evidence was not prejudicial to plaintiff company and, if error at all, constituted harmless error.

In their respective briefs, both parties discuss at considerable length what standards should be utilized in evaluating whether the events in question constituted a constructive lockout. Because there is sufficient evidence in the record to support the Board's finding of an actual lockout, it is unnecessary for this court to address the issue of a constructive lockout or to subscribe to any particular standard in determining the merits of such a claim.

For the reasons stated, the petition for certiorari is denied and dismissed. The writ heretofore issued is quashed. The judgment of the District Court is affirmed, and the papers in the case may be remanded to the District Court of the Sixth Division with our decision endorsed thereon.