**COOKSON AMERICA, INC.**

v.

**R. Gary CLARK, Tax Administrator, State of Rhode Island, Department of Administration, Division of Taxation.**

No. 90–614–M.P.

Supreme Court of Rhode Island.

May 18, 1992.

Everett H. Lundsten, Victoria Almeida, Adler, Pollock & Sheehan, Frank Caprio, Caprio & Caprio, Providence, for plaintiff.

Marcia McGair Ippolito, Bernard J. Lemos, Div. of Taxation, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This matter comes before the court by way of a petition for certiorari that seeks to review an order entered by the Sixth Division District Court vacating a decision rendered by the Rhode Island Department of Administration, Division of Taxation, which rejected a claim by the plaintiff, Cookson America, Inc. (Cookson), that it was entitled to a tax-exempt status. We affirm the trial judge's determination that Cookson is exempt from certain tax treatment.

On October 22, 1985, an administrative hearing was held that afforded Cookson the opportunity to present evidence and arguments that it qualified for exemption from the net-worth tax pursuant to G.L. 1956 (1980 Reenactment) § 44–11–2(2)(a), as amended by P.L.1983, ch. 2, art. 8, § 1.

Cookson is a holding company that located its corporate headquarters in Providence in 1982. Cookson acquires and holds securities; it engages in strategic planning concerning present companies owned and potential future acquisitions. Dennis Carvalho (Carvalho), Cookson's corporate controller, described the company's activities. He testified that Cookson supplies all the services relating to the acquisition of a company "from soup to nuts," because it acts as a liaison between its parent company in England and the corporation or individual selling a company that Cookson is acquiring. Cookson provides legal assistance, accounting research, and compliance help that includes filing federal and state tax returns and United States Department of Commerce reports, as well as federal-pension information and hazardous-materials reports. Carvalho noted that these activities are performed on Cookson's behalf and not for its subsidiaries. Cookson does not provide management services; nor does it engage in the day-to-day operations or direct management of any company in which it holds securities.

In 1982 Cookson filed its Rhode Island tax return on a basis separate from affiliated subsidiaries and claimed an exemption from the net worth tax under § 44–11–2(2)(a). Exemption status set forth in this particular section is afforded a company that derives 90 percent or more of its income from activities such as holding, buying, selling, or dealing in securities. In 1983 both Cookson and a subsidiary, SM Metals, Inc. (SM Metals),[1] filed their Rhode Island tax return on a consolidated basis and claimed exemption from the net-worth tax under the same provision, § 44–11–2(2)(a).

An audit was conducted on Cookson's 1982 and 1983 returns filed with the Rhode Island Division of Taxation by Michael Canole (Canole), a certified public accountant and multistate tax auditor. As a result of the audit, the tax division disallowed Cookson and SM Metal's filing from exempt status because Canole determined that they had failed to meet the 90–percent test pursuant to § 44–11–2(2)(a)(ii).

In his review of Cookson's 1982 tax return, Canole certified that Cookson reported $1,220,198 as "net allocations"[2] on its 1982 form. He also noted that what was disclosed as a "negative expense," reimbursements to Cookson by its subsidiaries for various costs of maintaining a corporate headquarters, was reported as net allocations. Canole indicated that the net allocations on the 1982 return closely corresponded to "management fees" reported on the 1983 return. Cookson provided management services that included acquiring credit, obtaining insurance, and filing tax returns for its customers. These "negative expenses," Canole explained, are more properly categorized as an item of income. Canole noted that Cookson reported a sum for what was designated as management fees as "other income" on its 1983 return. Canole also testified that in 1982 approximately 15 percent of Cookson's income derived from this management type of income and thus failed to satisfy the 90–percent test qualifying Cookson for tax-exempt status. However, Canole testified that if the transactions between Cookson and its subsidiaries had been different, so that Cookson's only income had come from dividends, Cookson would have qualified under the 90–percent test.

In reviewing Cookson's 1983 tax return, Canole testified that Cookson reported $1,083,000 as management fees and $390,000 as "group charge-out" income, reported as a total of $1,473,000 categorized as other income on the 1983 return. Canole stated that the management fees arose out of management services Cookson supplied as a broker or dealer and not out of the holding, buying, selling, or dealing in securities as prescribed by § 44–11–2(2)(a). According to Canole's calculations Cookson's income was apportioned as 85–percent dividend and interest income and roughly 15–percent management-fee income. Since the management-fee income would not qualify as income derived from the statutorily mandated activities, the percentage of income failed to satisfy the 90–percent test. Consequently Cookson's exemption was disallowed. Canole then computed Cookson's tax liability on a net-worth basis. On July 30, 1985, Cookson was assessed sums that are at issue in this appeal.[3]

Carvalho testified that Cookson is reimbursed for its cash flow from its subsid-

---

1. SM Metals was formed solely as a holding company to hold 20 percent of the capital stock of Stern Metals, Inc., a Delaware corporation, and possesses no assets or employees. As it qualified as an investment company for Rhode Island purposes, SM Metals only claimed exemption from the net-worth tax for purposes of the 1983 return.

2. This amount was combined with other deductions and reported on line 26 of the 1982 federal tax return. Reported as income were dividends of $2,750,000 and interest of $4,064,134.

3. Liabilities incurred for tax returns filed for 1982 total $150,409 and for 1983 total $180,628, later reduced to $174,016. Returns for 1985 and 1986 resulted in liabilities of $377,669 and $500,246, respectively. Refund requests for 1985 and 1986 are being held *nisi* pending the outcome of this appeal. Thus the total liability at issue is $1,208,952, not including accrued refund interest.

iaries in several forms of income. Income could be classified as dividend income, management-fee income, and group charge-out and/or interest income. The management-fee classification, Carvalho explained, does not describe moneys derived from management services but instead describes a form of reimbursement for operations conducted at the Providence corporate office. Carvalho indicated that a "management fee," a term inherited from the parent company in the United Kingdom, describes the reimbursement sum as one earmarked for expenses incurred in connection with long-range planning, compliance services and the acquisition and disposition of existing and future subsidiaries.

On April 1, 1986, the tax administrator upheld the auditor's findings and held that Cookson failed the 90-percent test because it received moneys derived from management types of services that it provided and thus failed to qualify for tax-exempt status pursuant to § 44-11-2(2)(a) for the years 1982 and 1983.[4] Cookson appealed the decision to the District Court, Sixth Division; and the appeal was heard as a de novo trial with both Cookson and defendant, R. Gary Clark, tax administrator of Rhode Island (tax administrator), entering into a stipulation of case travel and administrative record in lieu of oral testimony.

On December 12, 1990,[5] the trial judge held that Cookson was exempt from this tax treatment and entitled to a refund. In reversing the decision of the tax administrator, the trial judge observed that unrebutted testimony indicated that Cookson does not provide management services. As such, the trial judge found the income Cookson labeled and reported on its tax returns as management fees, group charge-out, and net allocations are receipts from the buying, selling, dealing in, or holding of securities. Thus Cookson's management-fee income was to be included in the statutory formula in order to satisfy the 90-percent test.

In this solitary issue on appeal, which is dispositive of ancillary issues raised in the tax administrator's brief, the tax administrator contends that the trial judge erred in construing the income reported by Cookson as management fees on its 1982 and 1983 tax returns as income derived from the buying, selling, dealing in, or holding of securities as described in § 44-11-2(a)(i) and (ii). This court is of the opinion that the trial judge was correct in her decision to reverse the findings set forth in the administrative hearing.

To resolve this controversy, we must first note that our scope of review on writs of certiorari is limited to a review of the record. General Laws 1956 (1988 Reenactment) § 42-35-16. Moreover, this court's scope of review properly includes questions of law involving the applicability of a statute to undisputed facts. *Rhode Island CATV Corp. v. Clark,* 541 A.2d 462 (R.I.1988); *George, Inc. v. Norberg,* 444 A.2d 868 (R.I.), *cert. denied,* 459 U.S. 908, 103 S.Ct. 214, 74 L.Ed.2d 170 (1982). When stipulations of fact are involved, however, we have earlier emphasized that such stipulations are binding on the parties and become part of the record on review before a trial justice. *Mart Realty, Inc. v. Norberg,* 111 R.I. 402, 410, 303 A.2d 361, 366 (1973). Thus our review of this issue is limited to a search for any legally competent evidence in the record that supports the decision under review. *Robert Derecktor of Rhode Island, Inc. v. Employment Security Board of Review, Department of Employment Security,* 572 A.2d 58, 59 (R.I.1990); *Berberian v. Department of Employment Security, Board of Review,* 414 A.2d 480, 482–83 (R.I.1980).

General Laws 1956 (1980 Reenactment) § 44-11-2, as it existed in 1982 and in 1983, required a corporation to pay to the state an annual corporate tax, calculated either as a percentage of the net income or as a portion of the net worth, whichever amount

---

**4.** However, the tax administrator reversed the auditor's determination that SM Metals failed to satisfy the statutory test due to new evidence submitted after the conclusion of the administrative hearing.

**5.** On January 2, 1991, the District Court, Sixth Division, issued an amended decision to correct a typographical error.

yielded the greater tax.[6] Section 44–11–2(2)(a) provided an exemption from the net-worth tax for those companies that satisfied its requirements, as certain corporations, such as holding companies, that had no net income nevertheless could remain subject to a tax liability based upon its net worth. A corporation was held exempt if, during the taxable year, "(i) the corporation is engaged in buying, selling, dealing in or holding securities on its own behalf and not as a broker, underwriter or distributor, [and] (ii) its gross receipts *derived from* such activities during the taxable year amounted to at least ninety percent (90%) of its total gross receipts derived from all of its activities during such year." (Emphasis added.) Section 44–11–2(2)(a).

■ It is well-settled that taxation-exemption statutes in this jurisdiction are strictly construed against the taxpayer. *Rhode Island Lithograph Corp. v. Clark,* 519 A.2d 589, 591 (R.I.1987); *Church of Pan, Inc. v. Norberg,* 507 A.2d 1359, 1361 (R.I.1986); *American Hoechst Corp. v. Norberg,* 462 A.2d 369, 372 (R.I.1983). The party claiming the exemption from taxation under a statute has the burden of demonstrating that the terms of the statute illustrate a clear legislative intent to grant such exemption. *Preservation Society of Newport County v. Assessor of Taxes of Newport,* 99 R.I. 592, 595–96, 209 A.2d 701, 704 (1965) (quoting *Society for the Preservation of New England Antiquities v. Tax Assessors,* 62 R.I. 302, 307, 5 A.2d 293, 296 (1939)). *See also Bertozzi v. Kolodziej,* 102 R.I. 161, 229 A.2d 48 (1967); *Red Fox Gingerale Co. v. Langton,* 100 R.I. 531, 217 A.2d 466 (1966).

■ We examine each portion of the test set forth in § 44–11–2(2)(a) according to this principle of construction. To do so, we construe the intent of the General Assembly through an examination of a statute's language and give to those words of the statute their "plain and ordinary meaning." *State v. Zorillo,* 565 A.2d 1259, 1261 (R.I. 1989) (quoting *State v. Markarian,* 551 A.2d 1178, 1180 (R.I.1988), and citing

*McGee v. Stone,* 522 A.2d 211, 216 (R.I. 1987)). However, this court has also stated that it "will not construe a statute literally when to do so would violate the intent of the Legislature in enacting the statute." *Lake v. State,* 507 A.2d 1349, 1352 (R.I. 1986). Although the hearing officer at the administrative hearing denied Cookson's exemption because its management-type services are not activities in which an ordinary investor would be engaged, we cannot interpret the statutory language provided in subsection (i) of the statute so as to bestow upon only ordinary investors the tax-benefit exemption. The statutory language clearly articulates that the plain and ordinary meaning of the language in 44–11–2(2)(a)(i) does not preclude a holding company from being eligible for the tax treatment.

Our interpretation of the provision supports the belief that the Legislature intended the words "gross receipts" to include a variety of activities derived from the buying, selling, dealing in, or holding of securities. Possible terms used to designate certain receipts are absent in the statute; it does not mention any specific forms of income. Indeed the statute merely uses the general term "activities" undertaken by a taxpayer to describe a variety of conduct that qualifies as gross receipts. If we were to endorse the hearing officer's conclusion that gross receipts for purposes of the statute are composed of only dividend and interest income, we would impute to the Legislature an intent in the enactment of § 44–11–2(2)(a)(ii) to legislate unnecessarily or to reach an incorrect result. Such a divination could exclude other forms of receipts involved with the buying, selling, dealing in, or holding of securities.

In this instant dispute, Cookson has not contested the fact that it was subject to net-income tax, an entirely separate issue. *See, e.g., Concord Investment Corp. v. New Hampshire Tax Commission,* 114 N.H. 105, 316 A.2d 192 (1974). Nor is Cookson attempting to recast management fees, group charge-outs, or negative ex-

---

**6.** The legislation relating to the taxation of corporations was amended by P.L.1988, ch. 12, § 1, which has since eliminated the tax calculated on a corporation's net worth.

penses as dividends. It is not the form of the receipts that is questioned but rather the issue of to which activity the receipts corresponded, that is, whether the questioned activities qualified as the conduct of a corporation engaged in buying, selling, dealing in, or holding securities on its own behalf. If the Legislature had so intended, it would have specifically noted those activities that qualified under the statute so as to produce a tax-exempt status. In the absence of clear statutory language, we shall not assume the contrary.

Consequently Cookson qualifies for the tax exemption under this court's interpretation of the two prongs of § 44–11–2(2)(a). Accordingly, the tax administrator's petition for certiorari is denied, the writ earlier issued is quashed, and the case is remanded to the District Court with our decision endorsed thereon.